## Richmond.

## D. G. WALLEN v. COMMONWEALTH.

November 16, 1922.

Absent, Burks, J.

1. CONTINUANCES—*Appeal and Error—Discretion of Trial Court.*—The question of continuances rests in the sound discretion of the trial court, and the Supreme Court of Appeals will not reverse the judgment of the trial court unless the ruling of that court is plainly erroneous.

2. CONTINUANCES—*Absence of Witness—Assurance that Witness' Testimony can be Obtained—Witness Beyond Jurisdiction.*—The absence of a witness who has not been summoned, where there is no assurance that his testimony could be had at another trial, if the case were continued, is not ground for a continuance. Likewise the refusal to grant a continuance will not be considered an abuse of discretion where a witness is beyond the jurisdiction or compulsory process of the court, and there is no reasonable certainty of the party being able to produce such witness at the next term.

3. JURY—*Summoning Jury from Nearby Town—List of Names of Persons so Summoned.*—Where a sufficient number of jurors to constitute a panel had not been obtained from those summoned and in attendance, nor from the bystanders, the court verbally directed the sheriff that he go to a nearby town and summon twelve persons, which was done. A list of the names of the persons so summoned was returned to the court, and the clerk was directed to call them to the jury box. As they responded, the clerk wrote their names in their places on the *venire facias* for the sheriff to make his return, and when the names had been so written the sheriff signed his return. While the court was selecting and impaneling the jury, but before the jury was sworn, the accused moved to quash the *venire facias*, because the court verbally directed the sheriff to summon the twelve persons, without any list. Section 4896 of the Code of 1919 authorized the court to cause to be summoned "from a list to be furnished by the court," so many persons as were deemed necessary to complete the panel. *Held:* That while the proceeding might have been somewhat irregular, yet, under section 4895 of the Code of 1919, it was not cause for setting aside the verdict, as it could not be said that the alleged irregularity

was intentional or such as probably resulted in any injustice to the accused.

4. JURY—*Irregularities in Summoning or Impaneling—Section 4895 of the Code of 1919.*—It is provided by section 4895, Code of 1919, not only that the objection to any irregularity in the summoning, returning, or impaneling of jurors shall be made before the jury is sworn, but that it shall not be a cause for setting aside the verdict, unless it also appears that such irregularity was intentional or such as would probably cause injustice to the Commonwealth, or to the accused.

5. CRIMINAL LAW—*Trial of Codefendants Jointly or Separately—Election by Accused and Commonwealth.*—In the instant case there was nothing to show that either of the defendants elected to be tried jointly, and they could not be so tried without the consent of the attorney for the Commonwealth (section 4895, Code of 1919, as amended by Acts 1920, page 24). The Commonwealth having proceeded to try one of the defendants separately, thereby elected that he should be so tried. Besides, it is the duty of the accused to make his election before his trial is begun, and where he fails to do so he will be considered to have waived his right to such election.

6. HOMICIDE—*Evidence—Conditions Immediately Preceding the Shooting—Res Gestae—Case at Bar.*—In the instant case, a prosecution for the shooting of a policeman by accused after the policeman had arrested friends of the accused, evidence as to conditions immediately preceding the shooting, statements of persons immediately following the shooting, testimony as to the relations of accused with one of the women arrested by deceased, testimony as to a physician's report, and the custom of officers in loading their pistols, were held admissible as part of the res gestae and as showing the motive for the shooting, or, if inadmissible, not reversible error.

7. HOMICIDE—*Evidence—Intoxication of Persons Arrested by Deceased—Case at Bar.*—In the instant case, a prosecution for the shooting of a policeman by accused after the policeman had arrested friends of the accused, testimony that the parties arrested by deceased were very much intoxicated, if improperly admitted, was harmless.

8. HOMICIDE—*Evidence—Statement of Friend of Accused at Time of Shooting—Case at Bar.*—In the instant case, a prosecution for the shooting of a policeman by accused after the policeman had arrested friends of the accused, the admission of testimony that just after the shooting one of these friends turned to accused and asked him to "go right ahead and complete the job," "shoot them all," if erroneous, was harmless.

9. HOMICIDE—*Malice—Instructions—Definition of "Malice."*—An instruction that the "malice" aforethought necessary to constitute the crime of murder may be either express or implied; that the word "malice" is used in a technical sense, and includes not only anger, hatred and revenge, but every unlawful and unjustifiable motive;

that "malice" is not confined to ill will to any one or more particular persons, but is intended to denote an action flowing from any wicked and corrupt motive, done with an evil mind and purpose and wrongful intention, where the act has been attended with such circumstances as to carry in them the plain indication of a heart regardless of social duty and deliberately bent on mischief; therefore malice is implied by law from any willful, deliberate and cruel act against another, however sudden, states the law with reasonable accuracy.

10. HOMICIDE—*Malice—Presumptions and Burden of Proof.*—On a charge of murder, malice is presumed from the fact of killing, when the killing has been proven and is unaccompanied by circumstances of palliation, and the burden of introducing evidence to rebut such presumption rests upon the accused.

11. HOMICIDE—*Self-Defense—Fault of Accused.*—Where the plea of self-defense is relied upon in a trial for murder, the law is that the plea is not available to a party unless he was without fault in bringing about the difficulty, and, in any case, the necessity relied upon to excuse the killing must not arise out of the prisoner's own misconduct.

12. INSTRUCTIONS—*Instructions Should be Read Together.*—All the instructions must be read together.

13. HOMICIDE—*Evidence Sufficient to Support Verdict—Case at Bar.*—In the instant case, a prosecution for killing a policeman who had arrested friends of accused, accused admitted the killing, but claimed that he shot in self-defense, and his own testimony and that of other witnesses sustained his version of the shooting. The testimony for the prosecution was that while deceased and another officer were arranging for the transportation of their prisoners, accused drove up, walked over into the crowd behind deceased, put his hand on deceased's left shoulder and his gun in his back and fired.

*Held:* That with this conflict in the evidence, the credibility and weight of the testimony were questions for the jury, and there was ample evidence to support their verdict of guilty.

Error to a judgment of the Circuit Court of Wise county.

*Affirmed.*

The opinion states the case.

*Mortòn & Parker* and *W. S. Cox*, for the plaintiff in error.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General,* and *Leon M. Bazile, Second Assistant Attorney-General,* for the Commonwealth.

WEST, J., delivered the opinion of the court.

D. G. Wallen, who was jointly indicted with Lina Fields for the murder of D. W. Littrell, was convicted of murder in the first degree, and sentenced to the penitentiary for twenty years. To that judgment this writ of error was awarded.

The accused assigns as error the action of the trial court:

1. In refusing to grant a continuance on account of the absence of material witnesses;

2. In refusing to quash the list and *venire facias* as made up;

3. In refusing to discharge the jury as finally empaneled;

4. In placing the accused on trial without any severance or election;

5. In admitting certain evidence over the objection of the accused;

6. In giving certain instructions on behalf of the Commonwealth; and

7. In refusing to set aside the verdict of the jury because contrary to the law and the evidence.

First Assignment. When the case was called for trial, the accused moved for a continuance on account of the absence of John Snodgrass and Henry Snodgrass, eyewitnesses to the shooting, his counsel stating that they were material witnesses.

John Snodgrass had testified at a former trial of the case and was under a recognizance to be present. Upon inquiry by the court as to his information of the whereabouts of these witnesses, counsel for accused stated that both lived in this State; that he was informed that Henry Snodgrass was temporarily in Ohio; and that John Snodgrass was at or near St. Charles, in Lee

county, Virginia. Whereupon the judge announced
that he would endeavor to secure the attendance of
John Snodgrass, but that the trial would proceed.    An
attachment was issued for John Snodgrass, directed to
W. Y. Tucker, an officer of Wise county, who was di-
rected to proceed immediately to Lee county and en-
deavor to locate John Snodgrass.    Tucker returned the
next day and reported to the court that he went to St.
Charles and made a thorough investigation; that he was
told that Snodgrass had not been there for a consider-
able time, and no one knew of his whereabouts.    The
accused, by counsel, thereupon requested permission to
read to the jury a stenographic report of John Snod-
grass' former evidence.    The attorney for the Common-
wealth interposing no objection, the court granted the
prisoner's request, and the evidence was read.

[1] It is well settled, by reason and authority, that
the question of continuances rests in the sound discre-
tion of the trial court, and this court will not reverse its
judgment unless the ruling of the court was plainly er-
roneous.    Counsel for the accused gave no assurance
that the witnesses could be produced if the motion for a
continuance were granted.    There were several other
eyewitnesses to the shooting who testified at the trial,
and the testimony of the Snodgrass witnesses would
have been largely cumulative and unlikely to have af-
fected the result.

[2] The absence of a witness who has not been sum-
moned, where there is no assurance that his testimony
could be had at another trial, if the case were continued,
is not ground for a continuance.    Likewise, the refusal
to grant a continuance will not be considered an abuse
of discretion where a witness is beyond the jurisdiction
or compulsory process of the court, and there is no
reasonable certainty of the party being able to produce

such witnesses at the next term.    *Hurd* v. *Com.*, 5 Leigh (32 Va.) 715; *C. & O. Ry. Co.* v. *Newton*, 117 Va. 260, 85 S. E. 461; *Matoaka Coal Corp.* v. *Clinch Valley Min. Corp.*, 121 Va. 522, 93 S. E. 799; *Town of Farmville* v. *Wells*, 127 Va. 528, 103 S. E. 596.    There is no error in this assignment.

[3, 4] Second Assignment.    While the court was selecting and empaneling the jury, but before the jury was sworn, the accused moved to quash the second *venire facias*, because the court verbally directed the sheriff to go to the town of Coeburn, in Wise county, and summon twelve persons, without any list.    On this point the facts appear from the record to be as follows:    A sufficient number of jurors to constitute a panel free from exception had not been obtained from those summoned and in attendance, and the court ordered another *venire facias* to be issued to complete the panel, directing the sheriff to summon twenty-five jurors from the by-standers.    The *venire facias* was issued, and the sheriff had partly executed the same, when the court verbally directed that he go to the town of Coeburn and summon twelve persons, which was done.    A list of the names of the persons so summoned was returned to the court, and the clerk was directed to call said persons to the jury box.    As they responded, the clerk wrote their names in their places on the *venire facias* for the sheriff to make his return, and when said names had been so written the sheriff signed his return.

Being unable to secure from those summoned and in attendance a sufficient number of jurors to constitute a panel of twenty free from exception, the court was fully authorized by section 4896 of the Code, 1919, to direct another *venire facias*, and cause to be summoned from the by-standers, or from a list *to be furnished by the court*, so many persons as were deemed necessary to

complete the panel.   It is apparent that the sheriff was unable to find twenty-five persons among the by-standers in the court room, who could probably qualify as jurors, and that the trial judge, for good and sufficient reasons, thought it improbable that they could be secured among the citizens of the town of Wise, and therefore directed the sheriff to go to the town of Coeburn and secure twelve persons to complete the list and the panel.

It will be observed that section 4896 of the Code, *supra,* authorized the court to cause to be summoned "from a list to be furnished by the court," so many persons as were deemed necessary to complete the panel. The position of the Commonwealth is that this was ample authority for the judge to direct the sheriff to summon the twelve citizens of Coeburn, whose names, upon their appearance in court, were furnished to the clerk by the court, as the list of the court, with directions to call them into the jury box.   While the proceeding may have been somewhat irregular, yet it is provided by section 4895, Code 1919, not only that the objection to any irregularity in the summoning, returning, or empaneling of jurors shall be made before the jury is sworn, but that it shall not be a cause for setting aside the verdict, unless it *also appears* that such irregularity was intentional or such as would probably cause injustice to the Commonwealth, or to the accused.   In the instant case, there being no evidence to the contrary, the presumption is that the trial judge did what in his opinion he had a right to do, under the statute, and it cannot be said that the alleged irregularity was intentional, or such as probably resulted in any injustice to the accused.   This assignment is therefore without merit.

Third Assignment.   We find in the record nothing to

show that any exception was taken to the refusal of the court to discharge the jury as finally empaneled.    If such motion were made and overruled for the reasons stated in discussing the second assignment, there is no error in this assignment.

Fourth Assignment.    This was the second trial of the case.   The record shows that, after the Commonwealth had closed its evidence in chief, counsel for the accused stated he had noticed on the day before, when the trial began, that Lina Fields was jointly indicted with the accused, and had just learned that the record did not show a severance or election by either party, and that he desired to know of the prosecution what proceeding would be taken with reference to the other defendant. The attorney for the Commonwealth replied that at the former trial the other defendant had not been arrested and was not present, and that the defendant went to trial without objecting, which was of itself a severance. The court ordered the trial to proceed, to which ruling the accused excepted.

Section 4895, Code of 1919, as amended by Acts of 1920, page 24 (same as section 4029, Code of 1887), provides as follows:   "If a person, indicted jointly with others for a felony, elect to be tried separately, the venire summoned for their trial may be used for him who is first tried, and the court shall award a *venire facias* for the trial of the others, jointly or separately, as they may elect."

In the case of *Barnes* v. *Commonwealth*, 92 Va. 794, at p. 802, 23 S. E. 784, at p. 786, Judge Buchanan, speaking for the court, said:   "The accused was indicted jointly with two other persons, but tried separately.   The record does not show upon whose motion she was tried, and this is assigned as error.   Each and every person indicted jointly for a felony may elect, as a

matter of right, to be tried separately, under section
4029 of the Code, and the attorney for the Common-
wealth has the right to try them separately, subject to
the control of the court; but persons jointly indicted
cannot be tried jointly without the concurrent election
of themselves, on the one hand, and the attorney for the
Commonwealth, or the court, on the other. But if it
were true that the accused had the right to be tried
separately or jointly at her election, *there is nothing in
the record to show that she made her election to be tried
jointly,* and the right (if she had such right) was denied
her. Such fact not appearing in the record by bill of
exception, or in any other manner, cannot be presumed
to have existed. *Curran's Case,* 7 Gratt. (48 Va.) 619,
626-7; *Lewis and Denny's Case,* 25 Gratt. (66 Va.) 938."
(Italics supplied.)

[5] In the case in judgment there is nothing to show
that either of the defendants elected to be tried jointly,
and they could not be so tried without the consent of
the attorney for the Commonwealth (*Barnes' Case,
supra.*) The Commonwealth having proceeded to try
the defendant separately, thereby elected that he should
be so tried. Besides, it is the duty of the accused to
make his election before his trial is begun, and where he
fails to do so he will be considered to have waived his
right to such election. This assignment is likewise
without merit.

Fifth Assignment. This assignment involves objec-
tions made to the evidence introduced on behalf of the
Commonwealth.

[6-8] The evidence objected to had reference to con-
ditions immediately preceding the shooting of Littrell,
statements of persons immediately following the shoot-
ing, testimony as to the relations of the accused with
Lina Fields, testimony as to the report of Dr. Gilmer,

statements of witnesses Taylor, Blessing and Belcher, and the custom of officers in loading their pistols. These objections are contained in seventeen bills of exception, numbered from four to twenty, inclusive.

In bill of exception No. 4, the part of the question objected to was as follows: "Mr. Blessing, I will ask you to go ahead and state * * what Mr. Littrell did, if anything, just prior to the time the trouble occurred?"

The fifth, sixth and seventh bills of exception relate to certain questions, the answers to which disclosed the fact that Lina Fields, the Snodgrass boys, Godsby, and the other men, both before and at the time of their arrest on the road, were very much intoxicated.

The fifteenth bill of exception complains that E. A. Horner was allowed to testify that a few minutes before the shooting he passed the crowd on the road and the woman and the men were drinking. Bill of exception number sixteen has reference to the action of the court in permitting Marshall Belcher to state that Littrell and Blessing went up to the Gap to see whether or not there was rioting there.

The evidence complained of tended to show the facts and circumstances leading up to the shooting, and was helpful to the jury in determining why the shooting occurred and what actually happened at the time of the shooting. The only issue before the jury was, whether the accused was justified in shooting Littrell, and the evidence objected to, if improperly admitted, was harmless error.

Bill of exception No. 8 relates to the action of the court in allowing the witness, Blessing, to testify that just after the shooting Lina Fields took from him the whiskey he had taken from Snodgrass, drank some, and threw it over the bank.

Bill of exception No. 10 complains that the witness,

D. B. Sayers, was allowed to testify that just after the shooting Lina Fields turned to Wallen and asked him to "go right ahead and complete the job," "shoot them all, Davy."

The eleventh bill of exception complains that the same witness was allowed to testify that Lina Fields was intoxicated; and the twelfth bill of exception complains because Sayers was asked whether Lina Fields was doing anything while she was talking to Wallen, and the answer being, "Why, she was walking along; come up alongside of Mr. Wallen."

Bill of exception No. 13 complains that Mrs. Sayers was allowed to say that, after the shooting, Lina Fields was talking to the accused. Bill of exception No. 18 complains that the Commonwealth was allowed to show a friendship existing between Lina Fields and the accused. The evidence tending to show friendly relations between the accused and Lina Fields was admissible as tending to contradict the contention of the accused, that he had no motive for shooting Littrell; and the other evidence was admissible as a part of the *res gestae,* or, if inadmissible, its admission was not reversible error.

A careful examination of the remaining bills of exception covered by the fifth assignment convinces us that a further consideration of them is unnecessary, as the evidence objected to is plainly admissible, or its admission was harmless error.

[9-11] Sixth Assignment. The trial court gave the jury seventeen instructions—six on motion of the attorney for the Commonwealth and eleven at the request of the accused. The accused excepted to the granting of instructions Nos. 5 and 6, offered by the Commonwealth, which were as follows:

"5. That the 'malice' aforethought necessary to con-.

stitute the crime of murder may be either express or implied. The word 'malice' in the foregoing definitions of murder is used in a technical sense, and includes not only anger, hatred and revenge, but every unlawful and unjustifiable motive. It is not confined to ill will to any one or more particular persons, but is intended to denote an action flowing from any wicked and corrupt motive, done with an evil mind and purpose and wrongful intention, where the act has been attended with such circumstances as to carry in them the plain indication of a heart regardless of social duty and deliberately bent on mischief; therefore malice is implied by law from any willful, deliberate and cruel act against another, however sudden. Thus, on a charge of murder, malice is presumed from the fact of killing, when the killing has been proved and is unaccompanied by circumstances of palliation, and the burden of introducing evidence to rebut such presumption rests upon the accused.

"6. That where the plea of self-defense is relied upon in a trial for murder, the law is that the plea of self-defense is not available to a party unless he was without fault in bringing about the difficulty, and, in any case, the necessity relied upon to excuse the killing must not arise out of the prisoner's own misconduct."

The principal objection to instruction No. 5 is directed against the last sentence in the instruction, as to the presumption of malice and the burden upon the accused to introduce evidence to rebut such presumption.

We think the definition of malice contained in this instruction states the law with reasonable accuracy; and the last clause as to the burden of proof is in nearly the exact words of an instruction which was approved by this court in the case of *Hall* v. *Commonwealth*, 89 Va. 179, 15 S. E. 517, and in the case of *Horton* v. *Commonwealth*, 99 Va. 848, 38 S. E. 184.

Instruction No. 6 conforms substantially with the law as laid down in *Vaiden's Case*, 12 Gratt. (53 Va.) 729-30, where it is said: "With regard to the necessity that will justify the slaying of another in self-defense, it should seem that the party should not have wrongfully occasioned the necessity; for a man shall not in any case justify the killing of another by a pretense of necessity, unless where he were without fault in bringing that necessity upon himself."

[12] Besides, all of the instructions must be read together, and when instructions Nos. 5 and 6 are read in connection with other instructions given at the request of the accused, it is apparent that the jury could not have been misled by the instructions.

[13] Seventh Assignment.   The accused was a policeman in the town of Appalachia.   On Sunday, December 12, 1920, J. M. Blessing, assistant sergeant, and D. W. Littrell, a policeman of Big Stone Gap, were out looking for violators of the law, and met four men and one woman, Lina Fields, standing in the public road about one mile from Big Stone Gap, drinking ardent spirits.   The officers arrested them and started back to Big Stone Gap.   One of the party, John Snodgrass, dropped a bottle of whiskey and reached for his pistol. Blessing drew his pistol on him, and he dropped his gun, and Blessing picked up the whiskey and the gun.   They had walked only a short distance when, being overtaken by an automobile, they "flagged" it for the purpose of securing transportation into Big Stone Gap.   All of the prisoners were intoxicated, and while the officers were arranging for their transportation, the accused drove up in a buggy, alighted and walked over into the crowd behind Littrell, put his hand on Littrell's left shoulder and his gun in his back and fired.   Littrell fell to the ground and died in a few minutes.   Blessing pulled his "gun"

and fired at the accused, and was shot three times by the accused, one bullet taking effect in Blessing's jaw, one in his shoulder, and one in his right arm.   The accused was also struck by the shot from Blessing's "gun." At the time the fatal shot was fired, Blessing was standing within six or eight steps of Littrell, who had his own pistol and the pistol he had taken from Snodgrass in his hands.   Just after Littrell fell, Lina Fields said to the accused, "Go right ahead and complete the job—shoot them all."

The foregoing are among the material facts which appear in the evidence relied on by the Commonwealth.

The accused admitted that he killed Littrell, but claimed he shot to save his own life.   He testified that when he drove up Littrell was standing there "with his gun up," and he left his buggy and went across to stop what he supposed to be trouble among those in the crowd, and touched Littrell on the shoulder and said, "Don't let's have any trouble," and that thereupon Littrell "threw his gun across like that" (indicating), and witness "knocked the gun off and it fired."   Witness says he then jerked his pistol out and fired, and does not know where he hit him.   Witnesses were introduced by the accused to sustain his version of the shooting and to contradict and impeach the testimony of Blessing, the leading witness for the Commonwealth.

With this conflict in the evidence, the credibility and weight of the testimony were questions for the jury. There was ample evidence to support their verdict, and we have no authority to set it aside.

The judgment complained of will be affirmed.

*Affirmed.*