# Monica Darnell Bryant

## v.

# Commonwealth of Virginia

Record No. 931478

June 10, 1994

Present: All the Justices

Nancy Quinn, for appellant.

H. Elizabeth Shaffer, Assistant Attorney General (James S. Gilmore, III, Attorney General, on brief), for appellee.

JUSTICE HASSELL delivered the opinion of the Court.

Monica Darnell Bryant was tried by a jury in the Circuit Court of Henrico County and convicted of common law larceny. She was sentenced in accordance with the jury's verdict to four years imprisonment. The Court of Appeals refused Bryant's petition for appeal by unpublished order, and we awarded her an appeal. On appeal, Bryant challenges the trial court's refusal to grant her a continuance and the sufficiency of the evidence to support her conviction.

In accordance with well established principles of appellate review, we will review the evidence and all inferences reasonably deducible therefrom in the light most favorable to the Commonwealth, the prevailing party in the trial court. On July 24, 1992, Bryant entered a Woolworth's department store in Henrico County. Bryant asked a store employee in the pet department to help her select goldfish and various supplies for an aquarium. Bryant left the pet department and went to the garden center, located near the rear of the store.

Bryant approached Marjorie Carrier, a cashier, paid for the items, and began to leave the store. As Bryant walked through the exit doors, a security alarm was activated. Carrier told Bryant that apparently someone had neglected to remove security sensors from the items Bryant had purchased. Bryant volunteered to take the items to the customer service department, located in the front of the store, and have the sensors removed.

Carrier informed another employee, Marie Mitchell, who was located near the customer service department, that Bryant was in

the process of returning certain items to the customer service department. Mitchell began to look for Bryant and, unable to find her, Mitchell told another employee, Cindy Garnett, what had occurred.

Garnett and Mitchell began to search the store, looking for Bryant. As they walked by a rest room, Garnett noticed that the door key was missing and they heard "paper rattling". Garnett and Mitchell sat down at a lunch counter located near the rest room and waited. Approximately twelve minutes later, Bryant opened the rest room door, looked at Mitchell, and then closed the door. A few seconds later, Bryant opened the door, approached Mitchell and said, "[y]ou have to check my bag, because the alarm system went off."

Mitchell, Bryant, and another Woolworth's employee, Joseph Gray, walked to the front of the store. Mitchell asked Bryant what happened to the items she had purchased. Bryant responded that she had placed the items back on the shelves.

Mitchell opened a bag that Bryant was holding. Mitchell saw the items Bryant had purchased and several sheets, towels, and wash cloths. Mitchell asked Bryant if she had a receipt for the sheets, towels, and wash cloths. Initially, Bryant stated that the items "didn't come from Woolworth's," but later said the items "came from [another] Woolworth's."

Garnett searched the rest room and found price tags on the floor and empty packaging materials in a trash can. The tags had been removed from the sheets, towels, and wash cloths that Bryant had in her possession. The packaging materials found in the bathroom had been removed from the wash cloths and sheets. Garnett asked Bryant, "[w]ell, did you take the merchandise?" Bryant responded "[o]kay, I'll level with you. I took it."

Bryant argues that the trial court erred by refusing to grant her motion for a continuance of the trial. This case was tried on January 21, 1993. On the morning of the trial, before the jury was selected, Bryant requested a continuance because an allegedly material witness was not present.

Bryant's counsel informed the court that Bryant had given him the address of Angela Smith, six days before the trial date. Bryant's counsel retained a private process server who tried to serve Smith with a witness subpoena on four occasions. On three occasions no one was present at the address that had been given to the process server. On the fourth occasion, someone answered the door

and informed the process server that Smith had moved and her address was unknown. Bryant's counsel had not spoken with Smith because she did not have a telephone and, on the morning of the trial, he did not know how to contact Smith.

The trial judge, denying Bryant's motion for a continuance, stated:

> [Bryant's counsel] has done all that he can do to get her [Smith] here by six days prior to trial, being given the address and he even tried through a private process server to get her served on the efforts that have been relayed to the Court, and has not been successful. There is no indication that there is an address where this lady can be found or that she would ever be brought before the Court, in fact, the indication is from the defendant herself that the lady is not going to come to court and with no representation as to any ability to ever get her here, or reasonably get her here at anytime reasonably certain in the future, then I think that the defendant . . . [has] done all you can to get this witness summonsed.
>
> . . . .
>
> The matter was set to be tried on October 29, 1992. The defendant did not appear for trial on that day with a jury being summonsed here on that day. A capias was issued for her arrest, which was subsequently executed and she was bonded on it. She appeared before the Court on November 6, and the matter was continued to November 9, for the matter to be set for trial today. . . . [B]ased on the reasons that I've previously stated, I'm going to deny the motion for a continuance.

■ We have stated that "[i]t is well settled, by reason and authority, that the question of continuances rests in the sound discretion of the trial court, and this court will not reverse its judgment unless the ruling of the court was plainly erroneous." *Wallen* v. *Commonwealth*, 134 Va. 773, 777, 114 S.E. 786, 788 (1922); *accord Lacks* v. *Commonwealth*, 182 Va. 318, 323, 28 S.E.2d 713, 715 (1944). Here, the trial court did not abuse its discretion. The case had previously been continued because Bryant had failed to appear. Bryant did not provide Smith's address to her attorney until six days before the trial. Bryant's counsel did not know how

to locate or contact Smith. Thus, the trial court had no reason to believe that Smith would have appeared at a later date.

Bryant argues that the evidence is insufficient to prove the elements of common law larceny beyond a reasonable doubt. Specifically, Bryant asserts that the Commonwealth failed to prove the asportation of the items. The Commonwealth contends that the evidence is sufficient to support the conviction for common law larceny.

■ In Virginia, larceny is a common law crime. We have defined larceny as "the wrongful or fraudulent taking of personal goods of some intrinsic value, belonging to another, without his assent, and with the intention to deprive the owner thereof permanently. The *animus furandi* must accompany the taking, but the wrongful taking of the property in itself imports the *animus furandi*." *Skeeter* v. *Commonwealth*, 217 Va. 722, 725, 232 S.E.2d 756, 758 (1977) (quoting *Dunlavey* v. *Commonwealth*, 184 Va. 521, 524, 35 S.E.2d 763, 764 (1945)); *Payne* v. *Commonwealth*, 222 Va. 485, 487, 281 S.E.2d 873, 874 (1981). The Commonwealth must also establish

in addition to a taking or caption—a carrying away or asportation of the property of another. There is a caption when the defendant takes possession; he takes possession when he exercises dominion and control over the property. There is an asportation when he carries away the property; any carrying away movement, however slight, even though it takes but a moment, is sufficient.

3 C. Torcia, *Wharton's Criminal Law* § 378 (14th ed. 1980) (footnotes omitted).

■ In *Pritchard* v. *Commonwealth*, 225 Va. 559, 303 S.E.2d 911 (1983), we discussed the distinction between possession and custody of personal property in the context of larceny:

The owner of personal property may deliver it to another upon conditions, or in circumstances, which give the recipient bare custody of the property. Constructive possession remains in the owner. . . . Even though the property remains in the control of the custodian, asportation has not been completed until it is carried away in violation of the condition precedent upon which it was delivered. But if the property is carried

away before the condition is performed, with the intent to steal it from the owner, the act becomes larceny.

*Id.* at 562, 303 S.E.2d at 913 (citations omitted). We also observed in *Pritchard* that the wrongful or fraudulent taking must be a trespass against the owner's constructive possession. "[T]here can be no trespass against mere custody; trespass can only invade possession and it can be perpetrated as easily by a custodian as by anyone else." *Id.* (quoting W. Clark & W. Marshall, *Law of Crimes* § 12.06, p. 849 (7th ed. 1967)).

■ Applying the aforementioned principles, we hold that the evidence is sufficient to support the conviction of common law larceny. Even though Bryant initially may have had bare custody of the items she removed from Woolworth's shelves, she committed a trespass that invaded Woolworth's constructive possession by removing the items from their packaging and by removing the alarm sensors. Once Bryant committed the trespass against Woolworth's constructive possession, any movement of the items, irrespective of how slight, is sufficient evidence of asportation.

■ Finally, we find no merit in Bryant's contention that the Commonwealth failed to prove that there had been a caption. Here, the evidence clearly establishes that Bryant had exercised dominion and control over Woolworth's property.

Accordingly, we will affirm the judgment of the Court of Appeals.

*Affirmed.*