COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Benton and Clements
Argued at Chesapeake, Virginia


SHAWN ELLIS

MEMORANDUM OPINION* BY
v.    Record No. 2704-99-1       JUDGE JEAN HARRISON CLEMENTS
FEBRUARY 27, 2001
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
William C. Andrews, III, Judge

Charles E. Haden for appellant.

Kathleen B. Martin, Assistant Attorney
General (Mark L. Earley, Attorney General, on
brief), for appellee.


Appellant Shawn Ellis was convicted in a bench trial of grand

larceny in violation of Code § 18.2-95.  On appeal, he contends

the evidence was not sufficient to sustain the conviction.  We

disagree and affirm the conviction.

As the parties are fully conversant with the record in this

case and because this memorandum opinion carries no precedential

value, this opinion recites only those facts necessary to a

disposition of this appeal.

When the sufficiency of the evidence is challenged on appeal,

we review the evidence "in the light most favorable to the

Commonwealth, granting to it all reasonable inferences fairly

---

* Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

deducible therefrom."  Bright v. Commonwealth, 4 Va. App. 248, 250, 356 S.E.2d 443, 444 (1987).  We may not disturb the conviction unless it is plainly wrong or unsupported by the evidence.  Sutphin v. Commonwealth, 1 Va. App. 241, 243, 337 S.E.2d 897, 898 (1985).  We are further mindful that the "credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the factfinder's determination."  Keyes v. City of Virginia Beach, 16 Va. App. 198, 199, 428 S.E.2d 766, 767 (1993).

Ellis claims that the Commonwealth failed to prove beyond a reasonable doubt that he was guilty of grand larceny. Specifically, he argues that the evidence presented at trial was insufficient to show that he took or carried away anything from the cash box in the office of Bud Goss of Key Finance. Furthermore, he adds, no stolen money orders or checks were found in his possession and he made no confession or incriminating statements.  Thus, he concludes, two necessary elements of common law larceny--the caption and asportation of the stolen property--were not proved.

Appellant further contends that the Commonwealth's evidence was circumstantial and merely showed that he had the opportunity to commit larceny.  It did not, he asserts, exclude every reasonable hypothesis except that of guilt.

To convict Ellis of grand larceny, the Commonwealth had to prove that he unlawfully took property valued at over $200

-

belonging to Key Finance with the intent to permanently deprive the company thereof.  See Code § 18.2-95(ii).  To prove that Ellis took the property, the Commonwealth had to establish that there was a caption or taking of the property and an asportation or carrying away of the property.  Bryant v. Commonwealth, 248 Va. 179, 183, 445 S.E.2d 667, 670 (1994).  "'There is a caption when the defendant takes possession; he takes possession when he exercises dominion and control over the property.  There is an asportation when he carries away the property . . . .'"  Id. (quoting 3 Charles E. Torcia, Wharton's Criminal Law § 378 (14th ed. 1980) (footnote omitted)).

Here, the evidence established that Ellis and his wife came into the office of Bud Goss, an employee of Key Finance in Hampton, around 1:00 p.m. on March 3, 1998, to sign papers for a used car they had purchased at the used car department.  Key Finance's office was located in the rear portion of a one-story building, the front portion of which was occupied by a rental company.  The building was described to be a trailer, approximately forty-one feet in length.

At trial, Lisa Berg, another Key Finance employee, testified about the office layout as follows:

> Q.  Now, would you describe for us your office set up?
>
> A.  We have in the front of the office is a rental company, and in the back part of the office is, you come through a door is our office, Mr. Goss and I.  And there's a wall,

-

and then Key Finance, J.R. Dickson who is the president of Key Finance, is in that office.

Q. Is there only one main entrance to the building?

A. Yes, there is only one.

Q. Now, where does Mr. Goss sit?

A. He sits to the right of me and it faces the main entrance in and out of Key Finance.

Q. Okay. And are you able to see persons that come in and out of the building to go to Mr. Goss's office?

A. Yes.

Q. Is there any wall or anything that obstructs your view from persons coming in and out of that door?

A. Not to Mr. Goss's office.

While Ellis and his wife were in Goss' office signing papers, Berg came in and placed a $300 cash payment she had received from another customer in the cash box. The cash box was kept in a filing cabinet in Goss' office.[1]

After signing the papers, Goss, Ellis, and his wife went outside to take a picture of the car and check a power window that was to have been fixed. Goss and Mrs. Ellis, each who had a key, had trouble getting the keys in the ignition to start the car.

---

[1] There were discrepancies in the evidence as to the nature and amount of the monies in the cash box at the time of the theft. However, as Berg testified that she put a cash payment of $300 in the box while the Ellises were in Goss' office, there is no question that the total value of monies in the cash box at the relevant time exceeded $200.

–

They tried for approximately two minutes.  Mrs. Ellis then commented that Ellis had the original key.  Goss, who thought Ellis had been with them the whole time, turned around and saw Ellis walking away from the office building toward the car.  At that point, Berg came out of the office and told Goss he had an emergency phone call.  Goss immediately went inside and saw that the contents of the cash box were missing.  As soon as Goss went inside, the Ellises got in their car and drove away.

Meanwhile, Berg who had remained inside working at her computer when Goss, Ellis, and his wife went outside to photograph the car, saw Ellis come back into the building by himself.  She asked if she could help him and he replied that Goss had told him to wait in his office.  Ellis went into Goss' office.  Berg thought it was unusual for a customer to come back in, and when she heard "some rattling" in Goss' office, she went to get another employee in the building to confront Ellis.  It took her less than a minute to find the other employee and she had a full view the entire time of anyone entering or exiting the building.  She saw no one else come in or leave the building.  Before Berg and the other employee could confront Ellis, he left Goss' office and exited the building.

Berg and the other employee immediately went into Goss' office and found that the cash box was empty.  It was at that point that Berg went outside and told Goss he had an emergency

-

phone call.  She did not want to confront Ellis and his wife without first speaking to Goss.

Only Berg, Goss, and a third employee, who was out of the office that day, had access to the cash box.  Neither Berg nor Goss took anything out of the box that day.

The trial court, which had the opportunity to hear and observe the witnesses on the stand and weigh the evidence accordingly, could reasonably infer from this evidence that it was Ellis who was responsible for the caption and asportation of the money stolen.

As to Ellis' argument that the Commonwealth's evidence was purely circumstantial and that it merely showed that he had the opportunity to steal money from the cash box but failed to exclude every reasonable hypothesis of innocence, our review of the record convinces us that this contention is without merit. "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt."  Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983).  "However, 'the Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant.' Whether an alternative hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong."  Archer v. Commonwealth, 26 Va. App. 1, 12-13, 492

-

S.E.2d 826, 832 (1997) (quoting Hamilton v. Commonwealth 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993)) (citation omitted).

Here, Ellis testified that he went back into Goss' office to get his keys. As set forth above, however, Ellis was the only person that Berg, who was in a position to observe the entrance to Goss' office, saw enter Goss' office after she put the $300 in the cash box and after Goss, Ellis, and his wife went outside to photograph the car. Berg heard rattling sounds coming from Goss' office while Ellis was in there. Immediately after Ellis left Goss' office, Berg discovered that the cash box was empty. We conclude from this evidence, as did the trial court, that the only reasonable hypothesis flowing from the evidence in this case is that Ellis took the contents of the cash box.

For these reasons, we hold that the evidence presented in this case sufficiently supports appellant's conviction of grand larceny and that the conviction is not plainly wrong. Accordingly, we affirm the conviction.

Affirmed.