COURT OF APPEALS OF VIRGINIA

Present:   Judges McClanahan, Petty and Powell
Argued at Richmond, Virginia


JACK EDWARD CARTER

                                                            OPINION BY
v.        Record No. 0203-08-2               JUDGE ELIZABETH A. McCLANAHAN
                                                            SEPTEMBER 1, 2009
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
L.A. Harris, Jr., Judge

    Robert P. Geary for appellant.

    Erin M. Kulpa, Assistant Attorney General (Robert F. McDonnell,
    Attorney General, on brief), for appellee.


    Jack Edward Carter appeals his conviction for grand larceny and argues the evidence

was insufficient to support his conviction.  We disagree and affirm the judgment of the trial

court.

I.  STANDARD OF REVIEW

    "On review of a challenge to its sufficiency, we view the evidence in the light most

favorable to the Commonwealth, the party prevailing below, and grant to it all reasonable inferences

fairly deducible therefrom."  Nolen v. Commonwealth, 53 Va. App. 593, 595, 673 S.E.2d 920, 921

(2009).  "Sufficiency-of-the-evidence review involves assessment by the courts of whether the

evidence adduced at trial could support any rational determination of guilt beyond a reasonable

doubt."  United States v. Powell, 469 U.S. 57, 67 (1984).  See also McMillan v. Commonwealth,

277 Va. 11, 19, 671 S.E.2d 396, 399 (2009); Jones v. Commonwealth, 277 Va. 171, 182, 670

S.E.2d 727, 734 (2009); Clanton v. Commonwealth, 53 Va. App. 561, 566, 673 S.E.2d 904, 906-07

(2009) (en banc).

## II. BACKGROUND

Carter devised a plan to take paint from a display shelf in a Home Depot store, place it in a shopping cart, meet Tracy Browning with the cart at the returns desk, have Browning represent that the paint had been previously purchased, and attempt to return it for a cash "refund." In accordance with the plan, Carter entered the store and placed four five-gallon buckets of paint into a shopping cart. Browning, as instructed by Carter, met Carter at the returns desk and took the shopping cart from Carter who then left the store and walked to a local restaurant. Browning attempted to return the paint for the retail value of $398.92 in cash but the assistant manager suspected a fraudulent return and alerted the loss prevention investigator who contacted police. The police arrested Browning[1] and later apprehended and arrested Carter. In a bench trial, Carter was convicted of grand larceny.

## III. ANALYSIS

Carter contends the evidence was insufficient to support his conviction because the Commonwealth failed to prove he intended to steal the paint.

Larceny is defined as the wrongful or fraudulent taking of personal property of some intrinsic value, belonging to another, "without his permission and with the intent to permanently deprive him of that property." Stanley v. Webber, 260 Va. 90, 96, 531 S.E.2d 311, 315 (2000); see also Jones v. Commonwealth, 3 Va. App. 295, 300, 349 S.E.2d 414, 417-18 (1986). "'The intent with which property is taken determines the offense.'" Overstreet v. Commonwealth, 17 Va. App. 234, 236, 435 S.E.2d 906, 907-08 (1993) (quoting Slater v. Commonwealth, 179 Va. 264, 267, 18 S.E.2d 909, 911 (1942)). "In determining intent, the factfinder may consider the conduct of the person involved and all the circumstances revealed by the evidence." Welch v. Commonwealth, 15 Va. App. 518, 524, 425 S.E.2d 101, 105 (1992) (internal quotation marks and citation omitted).

---

[1] Browning pled guilty to grand larceny.

Removal of property from an owner's premises is not required.

> To constitute the crime of simple larceny, there must have been a felonious taking of the property from the possession of the owner, and the thief must, for an instant at least, have had complete and absolute possession of the stolen property, and during such possession and control he must have feloniously removed the same from the place it occupied just before he grasped, seized or laid hold of the same.

Jones, 3 Va. App. at 301, 349 S.E.2d at 418 (internal quotations and citation omitted).  "Where the property has been feloniously taken, the slightest removal, even if it is only a hair's breadth, with intent to steal the same, is sufficient to constitute the asportation."  Id. at 302, 349 S.E.2d at 418.  "All that is required is that a defendant remove 'the items from the locations in the store where they were displayed by the owner.'"  Welch, 15 Va. App. at 524, 425 S.E.2d at 105.

Carter concedes the Commonwealth proved removal of the paint from the shelf, the placement of the paint in the shopping cart, and even asportation of the paint within the store.  He argues, though, he did not intend to steal the paint but planned to return it upon receipt of a refund.[2]  Although Browning testified she did not know what she would have done if Home Depot had refused to accept the return, we must presume the trial court resolved this factual question in favor of the Commonwealth, Jackson v. Virginia, 443 U.S. 307, 326 (1979), and found the paint would have been kept by Carter and Browning to conceal their own wrongdoing.[3]

---

[2] Only "when an individual harbors the requisite *intent to steal and permanently deprive the owner of property*, acts on such intent by taking possession of the property even for an instant, and moves the targeted property, [has] larceny [] been committed."  Welch, 15 Va. App. at 522, 425 S.E.2d at 104 (emphasis added).  The intent to temporarily deprive the owner of possession of property is insufficient to prove the intent to steal the property.  See Tarpley v. Commonwealth, 261 Va. 251, 256-57, 542 S.E.2d 761, 763-64 (2001).

[3] The dissent's statement that the trial court did not expressly find Carter and Browning were going to return the paint *only* if they received the refund ignores the standard of review requiring that we view the evidence in the light most favorable to the Commonwealth.  See Nolen, 53 Va. App. at 595, 673 S.E.2d at 921.  There was no evidence tending to show an intent to return the paint if a refund was not paid, and we must presume the trial court resolved any conflicting inferences regarding the intent to return the paint in favor of the Commonwealth "'even if it does not affirmatively appear in the record.'"  Harper v. Commonwealth, 49 Va. App.

"In Virginia, absent countervailing evidence of an intention otherwise, 'the wrongful taking of the property in itself imports the *animus furandi*,'" or intent to steal. McEachern v. Commonwealth, 52 Va. App. 679, 685, 667 S.E.2d 343, 346 (2008) (quoting Bryant v. Commonwealth, 248 Va. 179, 183, 445 S.E.2d 667, 670 (1994)). Thus, as the Commonwealth argues, "the very existence of a trespassory taking permits the inference (unless other circumstances negate it) that the taker intended to steal the property." Id. Applying the *animus furandi* inference, the trial court could properly infer Carter intended to steal the paint from his wrongful taking of the paint — he removed the paint from the display shelf and placed it in the cart without any intent to pay for it but with every intent to claim its ownership.[4]

Because the return of the paint was conditioned on Home Depot's acceptance of the refund request and we presume the trial court found the paint would have been kept had Home Depot refused the refund, removing the paint from the shelf, placing it in the cart, and representing the paint as having already been purchased created a substantial risk of permanent loss of the paint to Home Depot. "'[A]n intent to deprive the owner of his property permanently, or an intent to deal

---

517, 523, 642 S.E.2d 779, 782 (2007) (quoting Jackson, 443 U.S. at 326). In fact, if the Home Depot sales clerk had refused to pay the refund, it is unreasonable to conclude that Carter and Browning would have said "Okay, well, you keep the paint" or "run the risk of confirming the suspicions of the sales clerk or store security personnel by *putting the [paint] back* in the display." People v. Davis, 965 P.2d 1165, 1175 (Cal. 1998) (court discussing numerous cases in which "a defendant, rebuffed in an attempt to 'return' an item taken from a display in the same store, simply took the item with him when he left the store" to avoid drawing attention to the theft).

[4] Although a store owner generally consents to the public entering, viewing, and carrying around merchandise "for the limited purpose of purchase, or to otherwise engage in a lawful activity thereon," it is not the owner's will "that entrance be made to defraud or steal from him." Jones, 3 Va. App. at 300, 349 S.E.2d at 417 (where defendant remained in a store after its closing and removed items from their display locations, owner's consent did not extend to remaining in the store after the close of business). Similarly, common sense dictates that Home Depot's consent to the public removing and carrying around merchandise for the purpose of purchase did not extend to the removal of paint by Carter for the purpose of claiming it to be his own to seek a refund based on this false assertion.

with another's property unlawfully in such a manner as to create an obviously unreasonable risk of permanent deprivation, [is] all that is required to constitute the *animus furandi* - or intent to steal.'" Black's Law Dictionary 87 (7th ed. 1999) (quoting Rollins M. Perkins & Ronald N. Boyce, Criminal Law 332-33 (3d ed. 1982)). "What better proof can there be of [the intent to deprive the owner of his property], than the assertion of such a right of ownership by the [defendant] as to entitle him to sell it." Regina v. Hall, 69 Eng. Rep. 291, 292 (1848). An offer to sell the property to its owner is one of the strongest acts of dominion and control over the property. Id.

Although an intent to return the property could negate the *animus furandi* inference, "[t]he intent to return . . . must be unconditional. Thus it is no defense to larceny that the taker intended to return it only if he should receive a reward for its return or only upon some other condition which he has no right to impose." 3 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 19.5(b), at 90 (2d ed. 2003). "For all practical purposes [an owner] has been permanently deprived of his property if he can get it back only by paying the full value thereof." Rollins M. Perkins, Criminal Law 269 (2d ed. 1969). Carter's stated intent to return the paint was entirely contingent upon Home Depot's payment of the full value of the paint, a condition Carter had no right to impose. Therefore, we agree with the Commonwealth that Carter's intent "to 'sell' it back to the owner under fraudulent circumstances" did "not negate his intent to steal the paint at the time of the taking."

The intent to return, conditioned on a future event that may or may not occur and based on a false assertion of ownership, should be disregarded as a matter of law and, as such, cannot negate the inference of intent to steal.[5] As the Commonwealth asserted in the trial court, "the larceny was

---

[5] Because the claim of ownership evidences an intent to permanently deprive the owner of its property and the return is conditioned on the owner's acceptance thereby creating a substantial risk of permanent loss, the Supreme Court of California has also concluded "a defendant who takes an item from a store display with the intent to claim its ownership and restore it only on condition that the store pay him a 'refund' must be deemed to intend to

committed as soon as [Carter took] possession of the property with the intent to steal." <u>See</u>, <u>e.g.</u>, <u>Jones</u>, 3 Va. App. at 302, 349 S.E.2d at 418 (where, after the close of business, defendant moved items from their display locations but did not leave the store, the act of "larceny was accomplished when [he] removed the items from the locations in the store where they were displayed by the owner"); <u>see also</u> <u>Welch</u>, 15 Va. App. at 525 n.4, 425 S.E.2d at 106 n.4 ("the larceny was complete when Welch moved the televisions from the display shelf with the intent to steal" despite the fact he was found in an area on store premises open to the public for selection of items for purchase).[6]

---

permanently deprive the store of the item within the meaning of the law of larceny." <u>Davis</u>, 965 P.2d at 1175. <u>See also</u> <u>State v. Hauptmann</u>, 180 A. 809 (N.J. 1935) (where defendant kidnapped Lindbergh baby in its nightdress, court upheld conviction of murder in the commission of larceny since it was larceny to take the nightdress with the intent to return it only on condition of advancement of negotiations); <u>Slaughter et al. v. The State</u>, 38 S.E. 854 (Ga. 1901) (court affirmed conviction for larceny and rejected defendants' argument that they did not intend to permanently deprive owner of property where defendants took owner's property and returned it to claim an award); <u>Berry v. State</u>, 31 Ohio St. 219 (1877) (where horses were taken from owner's stable for the purpose of obtaining a reward for their return, court affirmed larceny conviction rejecting defendant's contention his intent was to deprive owner only temporarily of the horses); <u>Commonwealth v. Mason</u>, 105 Mass. 163 (1870) (court affirmed larceny conviction where defendant intended to take owner's horse, conceal it until owner offered a reward, and then claim the award).

[6] Because there was no intent to pay for the paint, Carter took possession of the paint – not bare custody as contended by the dissent. (By attempting to return the paint, Carter took not only possession, but claimed ownership of the paint.) "Where there is evidence that an individual has acted in a manner that is inconsistent with that of a prospective purchaser, and has exercised immediate dominion and control over the property, despite his continued presence within the owner's store, such conduct establishes sufficient possession to satisfy [the asportation] element of larceny." <u>Welch</u>, 15 Va. App. at 523-24, 425 S.E.2d at 105. It should be noted, as well, Carter does not contest the asportation element of larceny, rather he argues his intent to return the paint upon receipt of a refund negates his intent to steal.

We find the evidence supports the rationality of the trial court's finding that Carter intended to steal the paint. Accordingly, we affirm the judgment of the trial court. [7]

Affirmed.

---

[7] The Commonwealth argued on appeal that it is sufficient if Carter intended to steal the "value" of the paint, an argument we reject since "an intangible cannot be the subject of larceny." Bruhn v. Commonwealth, 35 Va. App. 339, 344, 544 S.E.2d 895, 897 (2001), aff'd, 264 Va. 597, 570 S.E.2d 866 (2002). Nevertheless, the Commonwealth argued in the trial court that the larceny was committed through the act of taking the paint from the shelf and then attempting to return it. The larceny was thus committed as soon as Carter took possession of the paint with the intent to steal it. Furthermore, the Commonwealth also argued on appeal that we could infer the intent to steal the paint by applying the *animus furandi* inference and that the intent to return it under fraudulent circumstances should not negate the intent to steal. Cf. Whitehead v. Commonwealth, 278 Va. 105, 677 S.E.2d 265 (2009) (where the rationale rejected by the Virginia Supreme Court was not argued in either the trial court or the Court of Appeals).

Powell, J., dissenting.

I respectfully disagree with the majority that the evidence was sufficient to convict Carter of grand larceny of paint under Code § 18.2-95. In my view, the evidence was insufficient as a matter of law to show that Carter intended to steal paint from Home Depot rather than use the paint to obtain money from the store. Therefore, I dissent from the analysis and judgment in this case.

While it is true that we must view the evidence that tends to support conviction and uphold that conviction unless it is plainly wrong or without evidence to support it, this Court is equally obligated to reverse a conviction where the judgment is contrary to the law and evidence, i.e. is plainly wrong. Tarpley v. Commonwealth, 261 Va. 251, 256, 542 S.E.2d 761, 763 (2001) (citing Code § 8.01-680; Commonwealth v. Taylor, 256 Va. 514, 518, 506 S.E.2d 312, 314 (1998); Commonwealth v. Jenkins, 255 Va. 516, 520, 499 S.E.2d 263, 265 (1998); Hickson v. Commonwealth, 258 Va. 383, 387, 520 S.E.2d 643, 645 (1999)).

As the majority correctly states, "'[l]arceny, a common law crime, is the wrongful or fraudulent taking of another's property without his permission and with the intent to deprive the owner of *that property permanently*.'" Hunt v. Commonwealth, 46 Va. App. 25, 29-30, 614 S.E.2d 668, 670 (2005) (quoting Tarpley, 261 Va. at 256, 542 S.E.2d at 763-64) (emphasis added). Larceny involves a taking and carrying away of a certain concrete article of personal property. Lund v. Commonwealth, 217 Va. 688, 691-92, 232 S.E.2d 745, 748 (1977). "[W]hen an individual harbors the requisite intent to steal and permanently deprive the owner of property, acts on such intent by taking possession of the property even for an instant, and moves the *targeted* property, larceny has been committed." Welch v. Commonwealth, 15 Va. App. 518, 522, 425 S.E.2d 101, 104 (1992) (emphasis added).

Here, Carter's indictment alleged that Carter, "on or about August 22, 2007, feloniously did *steal property, namely, paint, having a value* of two hundred dollars ($200) or more, belonging to Home Depot, in violation of § 18.2-95 of the Code of Virginia." In so doing, it was mandated that the Commonwealth prove that appellant intended to permanently deprive Home Depot of the paint.

The act committed by appellant is not easily classified. It is for this reason that "[n]ew crimes as embezzlement and false pretenses [were] developed to fill the gaps caused by the intricacies of proving possession in larceny prosecutions." Foster v. Commonwealth, 44 Va. App. 574, 576, 606 S.E.2d 518, 519 (2004), aff'd, 271 Va. 235, 623 S.E.2d 902 (2006). Indeed, this Court has recognized that

> the General Assembly began enacting statutes that declared
> persons who committed various acts of theft "shall be deemed
> guilty of larceny thereof." [Thereby employing a] legal fiction in
> an effort to consolidate the law of theft and to eliminate the
> "indistinct," "almost imaginary" differences in what "all amount to
> a criminal and fraudulent conversion by one man to his own use of
> another man's property."

Id. at 576-77, 606 S.E.2d at 519 (quoting Anable v. Commonwealth, 65 Va. (24 Gratt.) 563, 580-81 (1873) (Moncure, P., dissenting)) (citations omitted). The General Assembly enacted statutes to supplement the common law "for the obvious purpose of affording more adequate relief than had previously been available to merchants from the increasing depredations of thieves." Tweedy v. J.C. Penney Co., Inc., 216 Va. 596, 598-99, 221 S.E.2d 152, 154-55 (1976). See also Commonwealth v. Bruhn, 264 Va. 597, 601, 570 S.E.2d 866, 868 (2002) (holding that evidence that proved embezzlement was not sufficient to sustain a conviction for grand larceny because a trespassory taking was not proven). It is well recognized that under Virginia law, embezzlement, false pretenses, and larceny are three separate offenses and there is no general

"theft" statute as in most states. See United States v. Good, 326 F.3d 589, 592 n.5 (4th Cir. 2003).

The majority contends that we can infer that the appellant intended to deprive Home Depot of the paint because he wrongfully took the paint. Such conclusion presupposes that appellant possessed the paint rather than obtained bare custody of it. In discussing the difference between bare custody and possession of personal property in the context of larceny, the Supreme Court of Virginia has stated that

> [t]he owner of personal property may deliver it to another upon conditions, or in circumstances, which give the recipient bare custody of the property. Constructive possession remains in the owner. Examples are: a watch handed to a friend to time a race, the owner expecting its return at the end of the race; clothing handed to a customer in a clothing store, to try on for size, the owner expecting it to be returned if rejected, paid for if accepted; groceries loaded into a shopping cart in a supermarket, the owner expecting them to be paid for at a cash register before they are removed from the premises. Even though the property remains in the control of the custodian, asportation has not been completed until it is carried away in violation of the condition precedent upon which it was delivered. But if the property is carried away before the condition is performed, with the intent to steal it from the owner, the act becomes larceny. This act converts the recipient's bare custody to possession.

Pritchard v. Commonwealth, 225 Va. 559, 562, 303 S.E.2d 911, 913 (1983) (citations omitted). "'There can be no trespass against mere custody; trespass can only invade possession and it can be perpetrated as easily by a custodian as by anyone else.'" Id. (quoting W. Clark & W. Marshall, Law of Crimes § 12.06, at 849 (7th ed. 1967)); see also Bryant v. Commonwealth, 248 Va. 179, 184, 445 S.E.2d 667, 670 (1994) (reiterating that "the wrongful or fraudulent taking must be a trespass against the owner's constructive possession"). The evidence in appellant's case is not unlike the scenario where groceries are loaded into a cart – Home Depot retained constructive possession of the paint while appellant loaded the paint into the shopping cart and

delivered the shopping cart to Browning because there is no evidence that appellant intended to steal the paint.

I do not believe that the evidence proved that Carter intended to permanently deprive Home Depot of the paint. To the contrary, the evidence established Carter intended to take temporary custody of the paint until Browning received the refund from Home Depot. Browning testified at appellant's trial that their plan was to use the paint to obtain money and that the plan had not progressed as far as discussing what to do with the paint if she was unable to "return" it. The majority's statements that the return of the paint was "conditioned" on Home Depot's acceptance of the refund request implying that Browning and Carter would have kept the paint if no refund was obtained and that we can presume that the trial court found that Browning and Carter would have kept the paint to conceal their own wrongdoing are not supported by the record. First, as previously stated, Browning's testimony was that they had not discussed what to do with the paint in the absence of a refund. More importantly, however, the presumption as to what the trial court found is dispelled by the record. In making his ruling on the motion to strike, the trial judge found,

> I think the overall intent from the evidence I've heard so far was to take the paint, take it up and get a false refund, get the money. And I think they certainly had the intent to steal when they went in there and when you use the paint and I think there was transportation because it was taken to the register and with the intent to use that as a vehicle to get the money, I think that's sufficient . . . .

Similarly, when making his final ruling, the trial judge stated,

> I think when they take possession of the paint, it is moved at that time, with that intent in mind, that is a vehicle or agent then it allows them to commit the thrift [sic] of theft, which they are intending to do. *And I think when that happens, that is sufficient for the larceny.*

Clearly, the trial judge did not contemplate that Browning and Carter would have kept the paint as his statements indicate that he believed that the asportation of the paint within the store with the intent to turn it over for a refund was sufficient to establish the elements of the offense.

Likewise, the line of cases cited by the majority that one who takes property with the intent to return it *only* if he should receive a reward are not dispositive of the facts in this case, since there is no evidence, nor did the trial court conclude, that Carter and Browning were going to return the paint *only* if they received the money.

"[W]here an offense consists of an act combined with a particular intent, the intent must be established as a matter of fact, and 'surmise and speculation as to the existence of the intent are not sufficient.'" Dixon v. Commonwealth, 197 Va. 380, 382, 89 S.E.2d 344, 345 (1955). The intent to temporarily deprive the owner of possession of property is insufficient to prove the intent to steal the property. See Tarpley, 261 Va. at 256-57, 542 S.E.2d at 763-64. Thus, I would hold that the Commonwealth failed to prove that appellant had the intent to permanently deprive Home Depot of *the paint*.

Although the evidence is arguably sufficient to prove that Carter intended to obtain money from Home Depot by false pretenses, see Code § 18.2-178, the Commonwealth did not charge him with that offense or an attempt to commit that offense. "The Commonwealth cannot prosecute a defendant for a specific larceny and prevail by proof of another act of larceny for which the defendant 'was not prosecuted . . . .'" Owolabi v. Commonwealth, 16 Va. App. 78, 80, 428 S.E.2d 14, 15 (1993) (quoting Baker v. Commonwealth, 225 Va. 192, 195, 300 S.E.2d 788, 789 (1983)). Accordingly, I would hold that the evidence was insufficient to support Carter's conviction for grand larceny. For these reasons, I would reverse the conviction, vacate the judgment below, and dismiss the indictment.