Vahan Rebjebian was convicted of breaking and entering with intent to commit grand larceny, and Margo Krug of being a principal in the second degree.
The sole question presented here is the sufficiency of the proof to establish the intent to steal on the part of Rebjebian at the time he broke and entered a dwelling. To decide it we must first give a resume of the state's testimony, which was not refuted by the defendants or by anyone in their behalf.
The householder, during a period of about a week, had received several strange anonymous telephone calls which caused him to suspect that his home was being "cased" in preparation for a robbery; so he reported the matter to the police, who advised him to absent himself and his wife for an afternoon that the officers might occupy the house and receive anyone who entered it. After they had left, two detectives and the butler, employed by the owner, took places in the master bedroom. Meanwhile they had locked all doors and closed all windows on the ground floor save one window which was screened. At the time, besides the furnishings in the home, there were located in the master bedroom jewelry, worth $20,000, and, in the dining room or pantry, silverware valued at $3,000. When these men had been at their stations an hour or two, the telephone rang thirteen successive times, and after an interval of a few minutes it rang again sixteen successive times, by actual count. Of course it was not answered.
Within a short time a car carrying the defendants, and driven by Margo Krug, circled the block slowly and eventually stopped just beyond the house. Margo remained in the car while Rebjebian made his way to the house, peered in, and rang the doorbell. There was no response, and immediately afterward the men heard someone tampering with the lock of a door on the first floor. Shortly thereafter Rebjebian opened the door to the bedroom where the men were stationed and started to enter. When he was commanded to raise his hands, he jumped backward and slammed the door, whereupon one of the detectives fired through it, striking Rebjebian in his arm and stopping him dead in his tracks.
Rebjebian wore gloves, was in his shirt sleeves, and carried nothing unusual on his person except a screw driver and a bit of cellophane. Evidently he had disturbed nothing in the house and did not even tarry on the lower floor, but went almost directly to the bedroom on the second story where the jewelry was located, although he had started into another bedroom upstairs, where he was discouraged by the presence of two dogs.
We think that Judge Willard, before whom the case was tried without a jury, was eminently justified in concluding that Rebjebian entertained the intent when he entered the house of stealing property of the value of more than fifty dollars. True, the intent is an essential element of the offense and must be proved beyond a reasonable doubt. It will not be presumed from the act itself, that is, the unlawful breaking and entering, because here a specific intent is indispensable, hence must be expressly established. However, the state meets the burden placed upon it when it proves facts, aside from the breaking and entering, from which the intent may be clearly inferred, Simpson v. State, *Page 83 81 Fla. 292, 87 So. 920, or proves such intent by circumstantial evidence. Smith v. State, 87 Fla. 502, 100 So. 738.
So, if we examine the circumstances surrounding the incident we find that there had been a persistent effort on the part of someone, shortly before the entry, to determine by calling on the telephone whether anyone was in the house. Following that, the defendants were seen to drive slowly past the house and to stop just beyond it, but near enough that one fleeing would have a means of escape. The defendant Rebjebian then looked into the house and rang the doorbell. When no one responded he made his way in by opening a door which had been locked. In a minimum of time he appeared in a room where the owners kept jewelry of considerable value. Upon being ordered to raise his hands he attempted to flee.
In the light of these circumstances it is not unreasonable to assume that, in temperature so moderate he discarded his coat, he wore gloves for the purpose of leaving no telltale fingerprints. The screw driver, though a very commonplace tool, is hardly one that would be carried by a casual caller. Obviously the defendant had satisfied himself that there was no one in the dwelling; so he must not have entered it with the idea of committing any crime against the person.
When all these circumstances are placed together they lead inevitably to the conclusion that when the man entered he intended to steal property of such value that had he accomplished his purpose he would have committed grand larceny.
As for Margo Krug — she was caught red-handed too. She had driven the car before the entry, and was found in it right afterward. Her face was covered by a handkerchief, obviously to prevent recognition by passersby. In the car was the coat matching the trousers worn by Rebjebian. Although she was parked, the motor was running, and her only explanation of it was that she had forgotten to cut the switch. Besides this, the appellants were not strangers to each other. It was not controverted that they, though unmarried, were living together at a hotel under the name of Mr. and Mrs. Funk.
The judgment is affirmed.
ADAMS, C.J., and TERRELL and ROBERTS, JJ., concur.