FELKNER *v.* STATE
BAFFORD *v.* STATE

(Four Appeals in One Record)

[No. 52, September Term, 1958.]

*Decided November 24, 1958.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND and HORNEY, JJ., and HENRY, J., Chief Judge of the First Judicial Circuit, specially assigned.

*Carl H. Lehmann, Jr.,* with whom was *George W. Della* on the brief, for the appellant, John Felkner.

*Leonard S. Jacobson*, with whom was *Irving S. Reamer* on the brief, for the appellant, Dewey S. Bafford.

*E. Clinton Bamberger, Jr., Assistant Attorney General*, with whom were *C. Ferdinand Sybert, Attorney General, J. Harold Grady, State's Attorney for Baltimore City*, and *Norman Hochberg, Assistant State's Attorney*, on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

In the appeals of Felkner and Bafford from judgments and sentences that followed verdicts of guilty on the first count of a burglary indictment, we must reverse because there was not sufficient evidence that the breaking was with an intent to commit a felony. Felkner also was found guilty generally on two indictments charging forgery, uttering and false pretenses of and by the use of checks taken from the burglarized building. There was evidence to sustain those verdicts.

The building of the Daily Motor Express, Inc. was burglarized between closing time on the evening of November 21, 1957, and opening time the next morning. Stolen from it were a typewriter and a book of checks imprinted with the name of the express company and that of the Carlisle Trust Company, Carlisle, Pa., and numbered 771 to 1002. On the night of November 21, 1957, Felkner and another man entered a tavern in Baltimore operated by Carl Wolfarth. Felkner, who was known in the tavern, said: "I have a check here. I wonder if you can cash it." Felkner's companion endorsed the check and the tavern keeper cashed it. Felkner took $20.00 of the cash, saying it was owed him. The check was number 773 of the Daily Motor Express, Inc.

The proprietor of a grocery store in Baltimore testified that on or about November 23, 1957, Felkner bought some $30.00 worth of groceries for which he paid by check of the Daily Motor Express, Inc., No. 942, made out for $75.77. Felkner received the balance in cash. The witness thought, but was not entirely sure, that Felkner endorsed the check in his store, but was sure that he had written his address opposite the endorsement in the store before the check was cashed.

The bar tender of the Lansdowne Inn in Baltimore County testified that on or about November 21, 1957, Bafford asked him to cash two Daily Motor Express, Inc. checks numbered 772 and 774 for $75.00 each, and that three days later Bafford again asked him to cash two more Daily Motor Express checks.

Bafford told Sergeant Steinacker of the Baltimore Police Department that he waited in an automobile while some of his confederates broke into the Daily Motor Express office, and that on the following day he helped type up ten of the stolen checks on the stolen typewriter preparatory to forging them. A police department expert testified that Bafford had signed the check cashed by Felkner in the grocery store.

We first dispose of Felkner's convictions under the indictments for forging, uttering and false pretenses as to the stolen checks. He contends that there was no evidence on which he could have been found guilty of forgery or of obtaining money under false pretenses, by means of the check cashed in Wolfarth's tavern. However, he does not challenge the verdict of guilty in the matter of uttering the checks under the second count of each indictment or the verdict of guilty of obtaining money under false pretenses under the third and fourth counts of the indictment relating to the check cashed in the grocery store.

There was no contradiction that Felkner passed the check in the grocery store, knowing it to be worthless. The evidence clearly supports a finding that he participated directly in the uttering of the check in the Wolfarth tavern, and this is enough to sustain the conviction. 2 Wharton, *Criminal Law*, 12th Ed., Secs. 917 and 919. It is plain that he obtained less than a hundred dollars in the Wolfarth tavern by the false pretense of a worthless check he knew to be worthless, and even if he were but an accessory in the latter crime, he would be chargeable as a principal since the offense is a misdemeanor. *Watson v. State*, 208 Md. 210; *Coleman v. State*, 209 Md. 379; Code, 1957, Art. 27, Sec. 142. The utterings were felonies punishable by up to ten years' imprisonment (Code, 1957, Art. 27, Sec. 44), and the obtaining of money under the false pretense of a worthless check per-

mits up to eighteen months if the value of the goods obtained is less than $100.00 (Code, 1957, Art. 27, Sec. 142). Felkner was given six months on each conviction. Since the evidence as to uttering and false pretenses was sufficient to support the general verdict of guilty, its insufficiency to prove forgery (assuming that insufficiency) would not invalidate the verdict. This Court, in *Medley v. Warden,* 210 Md. 649, 652, said: "It is a complete answer to the petitioner's contention that the proof of uttering, which is not denied, would alone support the general verdicts."

If a sentence imposed under the general verdict of guilty under an indictment of several counts does not exceed the permissible maximum under the unchallenged counts, the accused may not successfully complain. *Harris v. State,* 182 Md. 27, 31-32.

We turn to the argument of Bafford and Felkner on the burglary charges. In form it is that the evidence was legally insufficient to convict, but in substance it is that it lacked weight enough properly to persuade the trier of the facts. Plainly there is no merit to the argument. The evidence was uncontradicted that both Felkner and Bafford possessed some of the stolen goods almost immediately after the theft and on several days thereafter. The possessor of stolen goods soon after the theft must give a reasonable explanation of how he came into possession or face the inference that he is the thief. *Debinski v. State,* 194 Md. 355, 360; *Daniels v. State,* 213 Md. 90, 103; *United States v. Washington,* 69 F. Supp. 143 147 (DC Md., 1946). There were no such explanations here. Bafford's own admission made him an accomplice. Statutory burglary is a misdemeanor, and in a misdemeanor an accomplice is chargeable as a principal. *Coleman v. State,* *supra.*

The attorney general with commendable candor suggested in argument that there might be no proof of intent to steal property of the value required to sustain the conviction on the first count of the burglary indictment. The indictment was in five counts. The first charged the appellants and their confederates with breaking into the building of the Daily Motor Express, Inc. "with intent to commit a certain felony

there and therein, to wit, with the intent then and there certain goods and chattels in the said warehouse then and there being found, then and there feloniously to steal, take and carry away . . . ." The second count charged the breaking "with intent to commit a certain misdemeanor there and therein, to wit, with the intent then and there certain goods and chattels under the value of one hundred dollars current money, in the said warehouse, then and there being found, then and there unlawfully to steal, take and carry away. . . . ." The third count charged the appellants with being rogues and vagabonds. The fourth count charged them of stealing "One Smith Corona typewriter, of the value of Twenty dollars current money; Two hundred and thirty-one blank checks of the total value of Four dollars and sixty-two cents current money . . . ." The fifth count charged receiving of the typewriter and the checks, knowing them to have been stolen. The trial judge explicitly and specifically found Bafford and Felkner guilty on the first count and not guilty on the fifth count, but made no mention whatever of the second, third and fourth counts. This amounted to a finding of not guilty on the second, third and fourth counts. *Glickman v. State,* 190 Md. 516, 523.

Code, 1957, Art. 27, Sec. 32, makes it a misdemeanor to break into a building other than a dwelling house "with an intent to commit murder or felony therein, or with the intent to steal, take or carry away the personal goods of another of the value of twenty-five dollars ($25.00) or more therefrom, * * *" Prior to its amendment by Chap. 229 of the Acts of 1943, the section made it a crime to break and enter with intent to steal or carry away the personal goods of another of any value. The 1943 amendment put the same dollar value measure in Sec. 32 of Art. 27 as at that time was in what is now Sec. 340 of Art. 27, (larceny of the goods of the value of $25.00 or more made a felony and larceny of goods of lesser value a misdemeanor): Chapter 18 of the Acts of 1952 amended what is now Code, 1957, Art. 27, Sec. 340, to increase the monetary measure to $100.00, and similarly amended what is now Sec. 342 of Art. 27 but the present Sec. 32 has not been similarly amended.

Although it seems evident that it intended the larger amount, we need not decide whether the first count of the burglary indictment in the case before us intended to charge the intent to steal goods of the value of $25.00 or more or of $100.00 or more, when it used the term "feloniously", because there was no proof that goods of the value of $25.00 or more were intended to be taken. *Jewett v. State,* 190 Md. 289, 291; *Hickman v. Brady,* 188 Md. 103, 105; *Barker v. Warden,* 208 Md. 662; *State v. Wiley,* 173 Md. 119.

Felonious intent is an essential element of burglary at common law and under statutes requiring such intent. The felonious intent like any other element of the crime must be proven. The proof need not be direct but may be inferred from the circumstances. The most conclusive evidence that the breaking was with the intent to steal is the larceny itself, although intent may exist and be proven although nothing in fact is taken. It is generally held that there must be proof of some fact or circumstance or act or declaration of the prisoner in addition to the proof of the mere breaking and entering from which the trier of the facts can find the intent. 3 Underhill, *Criminal Evidence,* 5th Ed., Sec. 717; Clark & Marshall, *Crimes,* 6th Ed., Secs. 13.06, 13.07; 1 Wharton, *Criminal Evidence,* 12th Ed., Sec. 164; *Robinson v. State,* 53 Md. 151; *People v. Marks,* 4 Parker Cr. 153.

Where the statute measures the degree of the burglary by the value of the goods which were intended to be stolen, the evidence must permit the trier of the facts reasonably to infer that it was intended to take goods of that value or more if there is to be a conviction. *Jalbert v. State* (Fla.), 95 So. 2d 589;[1] (see also *Dedge v. State* (Fla.), 174 So. 725; and

1. The defendant broke into a house and took small articles, including an ashtray and a microphone, apparently of small value. It was held that this justified a conviction of breaking with intent to commit petit larceny but not a conviction based on intent to commit grand larceny, although there was property in the house well in excess of the limit under the statute. The Court said: "We cannot say that merely because there was in the dwelling personal property worth in excess of $50 the defendant intended to steal more than he did. In the absence of other evi-

compare *Rebjebian v. State* (Fla.), 44 So. 2d 81) ; *State v. Andrews* (N. C.), 99 S. E. 2d 745, 749;[2] *Duren v. State* (Ark.), 245 S. W. 823.[3]

The fourth and fifth counts of the indictment allege the aggregate value of the stolen typewriter and blank checks to have been $24.62. The Attorney General concedes that there was no proof of the value of the typewriter or of the blank

---

dence or circumstances, the best evidence of what he intended to steal is what he did steal. Since no proof of value of the tray and microphone was offered, we cannot assume that they were of a value equal to or in excess of $50. * * * In the instant case no evidence indicated that the defendant intended to take more than he did."

2. Accused, a student, broke in to steal examination papers. The trial court instructed the jury to return a verdict of guilty of the felony charge if the intent was to steal "any examination papers". The Court said: "However, to justify a conviction of the felony charge as alleged under G.S. § 14-54, it was necessary for the State to prove and for the jury to find beyond a reasonable doubt that the defendant intended to steal property of sufficient value to make the taking thereof a felony. See 12 C.J.S. Burglary § 2, p. 666; 9 C.J., p. 1030. The evidence offered at the trial placed no specific pecuniary value on the examination papers. Nevertheless, it may be conceded that the evidence was sufficient to justify the inference that the examination papers possessed the requisite value to make the stealing of *any* of them larceny of misdemeanor grade."

3. This was a prosecution for burglary alleged to have been committed by entering a building with intent to steal fifty cases of Coca-Cola and three hundred cases of soda pop. The evidence was that the defendant reached through a broken window and picked up one bottle, worth only a few cents. The Court said: "* * * it is entirely unreasonable to believe that the party who thrust his hand through the hole in the glass did so with the intention of taking out enough of those bottles to amount to $10 in value.

It is not essential that the state prove by direct evidence an intention to commit a felony, for this fact may be, and generally is, established by proof of circumstances which indicate the intention of the burglar; but the jury can only draw reasonable inferences in order to discover the intent of the intruder, and it is not at all reasonable to say that there was any indicated intention * * * to take out any considerable quantity of the beverages mentioned above." The judgment was reversed and the case remanded to give the State an opportunity on retrial to produce other evidence as to intention.

checks, as such or as pieces of paper, but argues earnestly that since Felkner and Bafford used the typewriter to forge the checks and then uttered them and obtained more than $100.00, they must be deemed to have intended larceny of goods worth more than $100.00. To support this theory are cited *State v. Cassel*, 2 Harris & G. 407, which held that bank notes were to be considered as money and that their value was the amount the bank had promised to pay; and *Burgess v. State*, 161 Md. 162, 166, which said that whisky that could not be sold under the Volstead Act was the subject of larceny and, inferentially as other cases hold, that it had a "larceny value" equal to the value of the whisky on its illicit market.

The State's argument cannot be accepted. At common law choses in action, including bonds, notes and checks, were not the subject of larceny, being considered mere rights without corporeal existence, although the taking of the paper on which they were written could be larceny. 2 Wharton, *Criminal Law*, 12th Ed., Sec. 1113; *Kearney v. State*, 48 Md. 16. Since 1809, what is now Code, 1957, Art. 27, Sec. 343, has made robbery or larceny of a bond, a bank note, a promissory note, or a "check or order drawn on any bank of this State, or any other State" punishable in the same manner as robbery or larceny of goods and chattels. Since it is undisputed that the checks stolen in this case were blank when stolen, they were not "drawn" at all and were not the subject of larceny as checks within the meaning of the statute, but only as pieces of paper. *Kearney v. State, supra*. Wharton, *op. cit.*, in speaking of statutes that make the taking of a chose in action larceny, says in Sec. 1115: "In order, under the statutes, to render bonds, notes, etc., the subjects of larceny, they must be, at the time of taking, legally valid and subsisting securities for the payment of money, or some specific article of value." In *State v. Murphy* (Mo.), 42 S. W. 936-7, the dividing line between grand and petit larceny was $30.00. The charge was larceny of $29.35 in cash and a check alleged to be worth $1.35. The Court said that in the absence of proof that the check was drawn upon some particular bank or banking house in favor of some person named and signed by the person by whom drawn, "it was no more than

a blank piece of paper" without substantial value and could not be used to carry the larceny over the $30.00 line. See also *State v. Campbell* (N. C.), 9 S. E. 410, which decided that a due bill that had already been paid could not be the subject of larceny under a statute making it larceny to steal a writing obligatory to pay money, but that the theft would be that of a piece of paper. The rule would seem to be that if the check is an existing valid obligation when stolen, its value is the amount for which it is drawn, but also that it may be shown to be worth less than the amount for which it is drawn, or may be shown to be worthless, even if it is in form a valid check. Compare *State v. McClellan* (Vt.), 73 A. 993, with *Rasbury v. State* (Tex. Cr. App.), 126 S. W. 2d 972; but it is plain that if the check is not "drawn on any bank" when stolen, its value is only that of the paper on which it is printed plus the cost of printing. Compare *Keller v. United States*, 168 F. 697 (C. A. 7th Cir., 1909).

This test has been applied in the case of railroad tickets that have been stolen and the cases as to them are helpful by way of analogy. If the ticket is stolen after it has been issued, its "larceny value" is the price at which it is sold by the issuing company. However, if the ticket is undated, unstamped, and unsigned, when stolen, it is either not the subject of larceny or its value is only that of the paper plus the cost of printing. Wharton, *op. cit.*, Sec. 1118; 52 C. J. S., *Larceny*, Sec. 60 c (4). In the case of *McCarty v. State* (Wash.), 25 P. 299, the degree of the crime and the punishment were to be determined by the value of the property stolen. The indictment charged the theft of ninety-three railroad tickets. The court said the state "should have shown that they were genuine effective railroad tickets, as an unstamped, undated, and unsigned railroad ticket is not the subject of larceny" and that such "tickets had no more value than the intrinsic value of the paper on which they are printed with the cost of preparing them." See also *State v. Crumbey* (W. Va.), 94 S. E. 137; *Williams v. State* (Ga. App.), 76 S. E. 72. We think that the "larceny value" of a stolen article is its market or actual value in the condition in which it was when it was stolen. *Jewell v. State*, 216 Md. 110, 113; and that the value of the

blank checks in the case before us is not to be increased for purposes of prosecution because the takers forged and uttered them after they were stolen. The appellants are charged in count one with breaking with the intent feloniously to commit larceny. That intent is best measured, as we have noted, by what was actually stolen. There was no evidence in the case before us of intent except that to be inferred from what the appellants did. We hold that they cannot be found on this record to have had an intent to steal goods of greater value than the value of the goods they actually stole, at the time they were stolen.

Bafford makes an additional contention that Sergeant Stein-acker should not have been permitted to repeat on the stand the statement which Bafford made to him orally, because it was not transcribed. The point has no substance. An in-culpatory statement voluntarily made—and there is no challenge here as to the voluntariness of the statement—is admissible in evidence, whether it be oral or written. The weight to be given to it is for the trier of the facts.

For the reasons given, the judgments in the burglary charges will be reversed and the cases remanded for new trials so that the State may offer evidence of felonious intent if that evidence is available to it.

> *Judgments against Felkner in the forgery, uttering and false pretense cases affirmed. Judgments against Felkner and Bafford in the burglary cases reversed and cases remanded for new trials, costs to be paid by the Mayor and City Council of Baltimore.*