COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Elder and Haley
Argued at Salem, Virginia


STEPHANIE MICHELLE HUNT

                                                             OPINION BY
v.       Record No. 0894-04-3         JUDGE JAMES W. BENTON, JR.
                                                             JUNE 21, 2005
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
Joseph W. Milam, Jr., Judge

S. Jane Chittom, Appellate Defender (Michael G. Henkle, Third
Year Law Student; Virginia Indigent Defense Commission, on brief),
for appellant.

Josephine F. Whalen, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


The trial judge convicted Stephanie Michelle Hunt of grand larceny for unlawfully taking, stealing, and carrying away a winning Virginia Lottery ticket redeemable for a $2,500 prize. Code § 18.2-95. A conviction for grand larceny requires proof of a value of $200 or more. Id. Hunt contends that, under the common law, the value of a lottery ticket as a "chose in action" could be no more than the face value of the ticket itself, fifty cents. Thus, she argues that she could be convicted only of petit larceny. Because the indictment charged only common law larceny, we agree with Hunt and reverse her conviction.

I.

The indictment charged that Stephanie Michelle Hunt "did unlawfully and feloniously take, steal, and carry away one . . . Virginia Lottery Ticket . . . with a total value of $2,500 . . . in violation of [Code §] 18.2-95." The evidence at trial proved that Thomas Motley purchased lottery tickets at the Quickmart on Jefferson Street on the evening of July 28, 2003. Motley

testified that he usually played the numbers 1119 and 1191, and did so that night when he purchased a total of eleven or twelve tickets from Hunt, the store's employee. An investigator for the Virginia Lottery testified that the winning ticket number for the "pick four" lottery on July 28 was number 1191 and that the winning ticket had a prize value of $2,500. The ticket was purchased at this store for fifty cents. Four other winning tickets, worth $600 apiece, and seven non-winning tickets, were purchased at the same location within seconds of the $2,500 winning ticket. Both Hunt and Motley testified that Motley purchased these $600 winning tickets.

The morning after the winning ticket numbers were announced Hunt arrived at Motley's residence and asked to see his lottery tickets, but would not explain why. After Motley retrieved his tickets, he went with Hunt to her car and handed her the tickets. Hunt spoke on her telephone and then told Motley that the winning number from the night before had been 1119. Motley testified that, while he and Hunt were in the car, he knew he had won something but he was not sure how much.

After Hunt departed, Motley went to a nearby store to verify the winning ticket number. He learned that it was actually 1191. When he looked through his tickets, he discovered the winning ticket for the $2,500 prize was not among them. Motley returned to the Quickmart, where he had purchased the tickets, and talked to Hunt's sister, who worked there. As Hunt's sister spoke with Hunt on the telephone, Motley told her to tell Hunt to return his ticket. Motley testified that he never received the ticket from Hunt.

Lucille Davis, Hunt's neighbor, testified that Hunt told her that she had a winning lottery ticket and that she would give Davis $100 if she traveled to Farmville with Hunt and redeemed the ticket for her. Davis agreed and redeemed the winning ticket at a lottery office in Farmville. After cashing the check for $2,500, Hunt paid Davis $100 and kept the balance of the money.

Three or four weeks after Motley contacted the police, Hunt paid Motley $500 in the presence of Detective Carter, who investigated Motley's report of the stolen lottery ticket. At the time of the payment, Hunt said "[t]hat's $500 toward the $2,500." Hunt had not purchased anything from Motley and only owed him money for the ticket Motley said she stole.

At the end of the Commonwealth's evidence, Hunt made a motion to strike the grand larceny charge. Hunt argued that the evidence proved the ticket was worth only fifty cents. The trial judge overruled the motion, finding the evidence proved that the ticket was a winning lottery ticket when Hunt took it and that the ticket then was redeemable for $2,500. At the conclusion of all of the evidence, Hunt renewed the motion to strike. The judge ruled that Hunt's testimony established larceny and that the value of the ticket was proved to be $2,500. The trial judge convicted Hunt of grand larceny under Code § 18.2-95.

II.

Hunt contends the trial judge erred in convicting her of grand larceny because the indictment, which charged a violation only under Code § 18.2-95, required proof of "value of $200 or more." She argues that at common law, a lottery ticket, like "credit cards, checks, and other papers," were "choses in action" and had no value beyond the paper on which they were written. She argues, therefore, she properly could have been convicted only of petit larceny. The Commonwealth responds that Code § 18.2-98 "has expanded the definition of larceny to include bank notes, checks, or other writings or paper with a value of $200 or more." Thus, the Commonwealth argues that the evidence proved a value in excess of $200 because Code § 18.2-98 is broad enough to include lottery tickets within its definition and provides that "the money due on or secured by the writing . . . shall be deemed to be the value of the article stolen."

"In Virginia, larceny is a common law crime." Bryant v. Commonwealth, 248 Va. 179, 183, 445 S.E.2d 667, 670 (1994).

- 3 -

> Larceny, a common law crime, is the wrongful or fraudulent taking of another's property without his permission and with the intent to deprive the owner of that property permanently. Under Code § 18.2-95, grand larceny includes the taking, not from the person of another, of goods that have a value of $200 or more.

Tarpley v. Commonwealth, 261 Va. 251, 256, 542 S.E.2d 761, 763-64 (2001).

An indictment that charges grand larceny in violation of only Code § 18.2-95 alleges the common law crime. Owolabi v. Commonwealth, 16 Va. App. 78, 79 & n.1, 428 S.E.2d 14, 15 & n.1 (1993) (noting that common law larceny is "an offense punishable under Code § 18.2-95" and declining to "address the applicability of" certain statutes that punish acts as grand larceny because the indictment did not purport to charge under those statutes). By its express terms, Code § 18.2-95 prescribes the punishment for common law larceny.[1] Id. Thus, unless violation of a specific statute other than Code § 18.2-95 is charged, a larceny indictment charges the common law offense.

"The value of the goods specified in [Code § 18.2-95] is an essential element of the crime, and the Commonwealth bears the burden of proving that element beyond a reasonable doubt." Knight v. Commonwealth, 225 Va. 85, 88, 300 S.E.2d 600, 601 (1983). "Proof that an

---

[1] Code § 18.2-95 provides as follows:

> Any person who (i) commits larceny from the person of another of money or other thing of value of $5 or more, (ii) commits simple larceny not from the person of another of goods and chattels of the value of $200 or more, or (iii) commits simple larceny not from the person of another of any firearm, regardless of the firearm's value, shall be guilty of grand larceny, punishable by imprisonment in a state correctional facility for not less than one nor more than twenty years or, in the discretion of the jury or court trying the case without a jury, be confined in jail for a period not exceeding twelve months or fined not more than $2,500, either or both.

article has some value is sufficient to warrant a conviction of petit larceny, but where the value of the thing stolen determines the grade of the offense, the value must be alleged and the Commonwealth must prove the value to be the statutory amount." Wright v. Commonwealth, 196 Va. 132, 139, 82 S.E.2d 603, 607 (1954).

The following principle is well established: "At common law choses in action, including bonds, notes and checks, were not the subject of larceny, being considered mere rights without corporeal existence, although the taking of the paper on which they were written could be larceny." Felkner v. State, 146 A.2d 424, 430 (Md. Ct. App. 1958); see also State v. West, 200 S.E.2d 859, 862 (W. Va. 1973) (holding that a statute is required for choses in action to be the subject of larceny). We relied upon this principle in Owolabi, where we held that the taking of a paper or credit card could be the subject of larceny under the common law but that the value was simply of the paper or the plastic itself, not the value it represented. 16 Va. App. at 80-81, 428 S.E.2d at 15-16. Furthermore, in defining the value and punishment for common law grand larceny, Code § 18.2-95 provides that "[a]ny person who . . . commits simple larceny not from the person of another of *goods and chattels* of the value of $200 or more . . . shall be guilty of grand larceny." (Emphasis added). Thus, the common law in Virginia still exempts choses in action from its coverage.

The Commonwealth argues that "the General Assembly has extended the definition of larceny to cover bank notes, checks, and other papers of value under Code § 18.2-98." Although this is in fact the case, the Commonwealth fails to note in its argument that the indictment in this case charged only the common law offense. The indictment solely referenced Code § 18.2-95. Nothing contained in the indictment or raised at trial implicated Code § 18.2-98.

Virginia, similar to other states, long ago enacted a statutory form of larceny for writings and paper of value--Code § 18.2-98.[2] As the West Virginia Supreme Court noted, when commenting on a similar statute enacted in West Virginia, "[i]t is only by force of this section that bank notes, checks and other writings and papers of value are made subject of larceny, as at common law they were not the subject of larceny." West, 200 S.E.2d at 862.[3] Thus, even if we assume that Hunt's actions were sufficient to prove larceny as defined in Code § 18.2-98, the

---

[2] The statute currently reads as follows:

> If any person steal any bank note, check, or other writing or paper of value, whether the same represents money and passes as currency, or otherwise, or any book of accounts, for or concerning money or goods due or to be delivered, he shall be deemed guilty of larceny thereof, and receive the same punishment, according to the value of the thing stolen, prescribed for the punishment of the larceny of goods and chattels. The provisions of this section shall be construed to embrace all bank notes and papers of value representing money and passing as currency, whether the same be the issue of this Commonwealth or any other state, or of the United States, or of any corporation, and shall include all other papers of value, of whatever description. *In a prosecution under this section, the money due on or secured by the writing*, paper or book, and remaining unsatisfied, *or which in any event might be collected thereon*, or the value of the property or money affected thereby, *shall be deemed to be the value of the article stolen.*

Code § 18.2-98 (emphasis added).

[3] We note that the legislature enacted the following statute *after* the indictment in this case specifically to address larceny of lottery tickets.

> B. Any person convicted of violating this section shall be guilty of a Class 1 misdemeanor.
>
> C. Any person who steals or otherwise unlawfully converts to his own or another's use a lottery ticket, prize, share, or portion thereof shall be guilty of larceny. For purposes of this subsection, the face amount of a lottery ticket, prize, share, or portion thereof shall be deemed to be its value.

Code § 58.1-4014.

indictment against Hunt referenced only Code § 18.2-95 (the common law crime) and, thus, did not charge a violation of Code § 18.2-98. The principle is well established that "[t]he Commonwealth cannot prosecute a defendant for a specific larceny and prevail by proof of another act of larceny for which the defendant 'was not prosecuted, and on which the jury was not instructed.'" Owolabi, 16 Va. App. at 80, 428 S.E.2d at 15 (quoting Baker v. Commonwealth, 225 Va. 192, 195, 300 S.E.2d 788, 789 (1983)).

> An accused is entitled to be clearly informed of the charge against him. Va. Const. art. I, § 8. Where, as here, the Commonwealth elects to prosecute a defendant for a specific category of larceny, and no other, its case must either prevail or fail upon that election. The Commonwealth cannot retrospectively argue that [the accused] should be convicted of a crime for which he was not prosecuted, and on which the jury was not instructed.

Baker, 225 Va. at 194-95, 300 S.E.2d at 789.

The Supreme Court's decision in Commonwealth v. Bruhn, 264 Va. 597, 570 S.E.2d 866 (2002), supports this result. There, "the evidence adduced at trial was insufficient to prove grand larceny under the common law definition of that crime . . . [but] the evidence . . . was sufficient to prove . . . embezzlement." 264 Va. at 601, 570 S.E.2d at 868. The Court reversed the conviction, however, holding that "proof of embezzlement, as defined by [Code § 18.2-111], will not sustain a conviction under an indictment charging grand larceny under Code § 18.2-95." 264 Va. at 599, 570 S.E.2d at 867.

The Court reasoned that a review of the statutory changes manifested the verity of this result. It first noted that prior to 1994, Code § 18.2-111 provided that one who committed embezzlement "shall be deemed guilty of larceny" and "may be indicted as for larceny" and that "proof of embezzlement under this section shall be sufficient to sustain the charge." Bruhn, 264 Va. at 601, 570 S.E.2d at 868; see also 1979 Va. Acts, ch. 349. That version of Code § 18.2-111 also provided that, "[o]n the trial of every indictment for larceny, however, the defendant, if he

- 7 -

demands it, shall be entitled to a statement in writing from the attorney for the Commonwealth designating the statute he intends to rely upon to ask for conviction." The Supreme Court held that this version of the statute demonstrated the General Assembly's "recogni[tion of] the long-standing practice of permitting other unlawful takings, such as receiving stolen goods and theft by false pretenses, to be charged as larceny." Bruhn, 264 Va. at 601, 570 S.E.2d at 868.

Continuing its review of the statutory history, the Court noted the following:

> In 1994, however, the General Assembly amended Code § 18.2-111 and deleted the language that permitted a defendant who had committed embezzlement to be "indicted as for larceny." The amendment further eliminated the phrase that made proof of embezzlement "sufficient to sustain the charge" of larceny and the requirement that the Commonwealth elect, upon motion of the defendant, the specific statutory theory of the crime of larceny it intended to rely upon for a conviction.

Id. at 602, 570 S.E.2d at 868-69. The Supreme Court held that these amendments "constituted a complete reformulation of the statute. Most particularly, the elimination of the permissive provision that embezzlement could be 'indicted as for larceny' evinces a clear legislative intent to prohibit that former practice and require specificity in the indictment." Id. at 602, 570 S.E.2d at 869.

After the Supreme Court's decision in Bruhn, the General Assembly again amended Code § 18.2-111, returning to its text the original language that one guilty of embezzlement "shall be deemed guilty of larceny and may be indicted as for larceny" and that "[p]roof of embezzlement shall be sufficient to sustain the charge of larceny." 2003 Va. Acts, ch. 733. Significantly, however, the General Assembly did not amend Code § 18.2-98 or numerous other code sections providing, like Code § 18.2-111, that particular behavior "shall be deemed . . . larceny." Thus, in reviewing the "shall be deemed . . . larceny" language in Code § 18.2-98, we give it the same interpretation the Supreme Court's decision in Bruhn gave to almost identical language in Code § 18.2-111. By analogy to Bruhn, a violation of Code § 18.2-98

"shall be deemed . . . larceny" *for purposes of punishment*, but Code § 18.2-98 does *not* permit the accused to be "indicted as for [common law] larceny" or provide that proof of statutory larceny in violation of Code § 18.2-98 "shall be sufficient to sustain a charge of [common law] larceny" in violation of Code § 18.2-95. The language of Code § 18.2-98, in marked contrast to the language of Code § 18.2-111 as amended by the General Assembly in 2003, "evinces a clear legislative intent to . . . require specificity in the indictment." Bruhn, 264 Va. at 602, 570 S.E.2d at 869.

For reasons about which we may only speculate, the Commonwealth prosecuted Hunt for common law larceny and not for the statutory offense as provided in Code § 18.2-98. Under the common law, the value of the ticket is the value of the paper on which it is printed. Because the evidence failed to prove the value was $200 or more, it was insufficient to support a conviction for grand larceny under Code § 18.2-95 and was sufficient, at most, to prove petit larceny. Accordingly, we reverse the conviction and remand to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.