UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, AtLee and Senior Judge Frank
Argued at Norfolk, Virginia


TIFFANY LAUREN PHILLIPS

MEMORANDUM OPINION* BY
v. Record No. 0237-16-1 JUDGE RICHARD Y. ATLEE, JR.
MARCH 28, 2017
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
David W. Lannetti, Judge

J. Barry McCracken, Assistant Public Defender, for appellant.

Stephen L. Forster, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Following a bench trial, a judge of the Circuit Court of the City of Norfolk convicted

Tiffany Lauren Phillips of felony embezzlement. Part of her sentence required Phillips to pay

$3,502 in restitution. She appealed, and assigns two errors. First, the trial court erred when it

found the embezzled property had "a value of $200 or more." Second, the trial court erred when

it ordered Phillips to pay restitution of $3,502 "because the Commonwealth's evidence both at

trial and at sentencing did not establish a direct monetary loss in that amount to anyone as a

result of [her] conduct." We affirm her conviction, but vacate her restitution obligation.

I. BACKGROUND

We view the evidence in the light most favorable to the Commonwealth, which prevailed

at trial. Leigh v. Commonwealth, 192 Va. 583, 587, 66 S.E.2d 586, 589 (1951). Phillips worked

as a cashier at a Norfolk convenience store, the Tinee Giant. One of her responsibilities was

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

selling money orders to customers.  Per store procedure, if a customer wished to buy a money order, the cashier would print the money order and a receipt and hand both items to the customer in exchange for cash in the amount of the money order (plus a small fee).  The cashier would then place the cash in an envelope and drop the envelope into a safe.  Before the money order machine would print a money order, the employee making the sale had to enter his or her unique identifying number into the machine.  This enabled a manager to print a "money order report" showing the number of money orders sold, the amount of each order, the time of each sale, and the cashier who handled each sale.

Phillips worked on August 3, 2008.  In the middle of the day she told her manager she was feeling sick and needed to leave.  Phillips then left the store and never returned.  The next day, the manager reviewed the money order report from the previous day and saw that between 12:14 p.m. and 12:16 p.m., Phillips sold nine money orders to a customer:  seven $500 orders, and two $1 orders.  The total value of these money orders was $3,502, but there was no corresponding cash in the safe.  The manager contacted the loss prevention officer for Tinee Giant's parent company.  The loss prevention officer reviewed Tinee Giant's video surveillance and saw Phillips process several money orders for a customer at 12:14 p.m.  Phillips gave the customer the money orders, but the customer did not give Phillips any cash in exchange for the orders.  The customer left the store, and Phillips left a few minutes later.

The Commonwealth presented no evidence that any of the money orders were ever cashed.  The manager testified that "the money orders were stopped because we didn't know what was exactly going on.  And all of the money orders had a stop put on it [sic]."  She later reiterated:  "[W]hen I did my paperwork and called the corporate office, they put a stop on the money orders."  The manager also testified that the money orders Tinee Giant sold were "Western Union money orders."

The trial court found Phillips guilty, and sentenced her to three years in the penitentiary, suspending all but five days. The trial court also ordered Phillips to pay restitution of $3,502 "to the victim." Phillips appealed.

## II. ANALYSIS

### A. Value

Phillips first asserts that "[t]he evidence was insufficient to support a conviction of felony embezzlement because the evidence did not establish that the value of the converted money orders was $200 or more." For the reasons that follow, we do not agree, and we affirm her conviction.

"When considering on appeal the sufficiency of the evidence presented below, we 'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence to support it.'" Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002)); see also Code § 8.01-680. Because "we must consider the evidence in the light most favorable to the Commonwealth," Leigh, 192 Va. at 587, 66 S.E.2d at 589, we "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom," Wright v. Commonwealth, 196 Va. 132, 137, 82 S.E.2d 603, 606 (1954). When the meaning of a statute is in question, we conduct our review *de novo*. Banks v. Commonwealth, 67 Va. App. 273, 282, 795 S.E.2d 908, ___ (2017). "The inferences to be drawn from proven facts, so long as they are reasonable, are within the province of the trier of fact." Hancock v. Commonwealth, 12 Va. App. 774, 782, 407 S.E.2d 301, 306 (1991). When, as here, value determines whether a crime is a felony or a misdemeanor, "the

Commonwealth must prove that element beyond a reasonable doubt." Walls v. Commonwealth, 248 Va. 480, 481, 450 S.E.2d 363, 364 (1994).

Phillips claims that the evidence of the value of the embezzled property was insufficient, and points out that there is no statutory presumption that the value of a money order is the amount printed on its face. For that reason, she argues, the common law applies, and the common law value of a money order is simply the value of the paper upon which it is printed. Phillips points to precedent from this Court that she believes supports her assertion. The Commonwealth claims this argument is procedurally defaulted under Rule 5A:18, which requires that objections be contemporaneous, specific, and substantially the same at the trial and appellate levels. We agree that "[m]aking one specific argument on an issue does not preserve a separate legal point on the same issue for review." Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (*en banc*). However, we are satisfied that Phillips preserved this argument, even if she uses more expansive language on appeal than she did in front of the trial court, and provides more detailed references to buttress her arguments. She argued to the trial court: "There's no evidence that the owner was deprived of anything except the paper on which the money orders were written." Because this argument, along with others to the trial court on the issue of value, sufficiently preserved the argument Phillips now makes, Rule 5A:18 does not bar our consideration of this assignment of error.

Code § 18.2-111 states:

> If any person wrongfully and fraudulently use, dispose of, conceal or embezzle any money, bill, note, check, order, draft, bond, receipt, bill of lading or any other personal property, tangible or intangible, which he shall have received for another or for his employer, principal or bailor, or by virtue of his office, trust, or employment, or which shall have been entrusted or delivered to him by another or by any court, corporation or company, he shall be guilty of embezzlement. Proof of embezzlement shall be sufficient to sustain the charge of larceny. Any person convicted hereunder shall be deemed guilty of larceny and may be indicted as

- 4 -

> for larceny and upon conviction shall be punished as provided in [Code] § 18.2-95 or [Code] § 18.2-96.

(Code § 18.2-95 makes it a felony to commit "simple larceny not from the person of another of goods and chattels of the value of $200 or more.") While we agree that Code § 18.2-111 establishes no presumption of value, the cases Phillips cites do not mandate the outcome she seeks.

In Owolabi v. Commonwealth, 16 Va. App. 78, 428 S.E.2d 14 (1993), Owolabi used a stolen social security number to obtain credit cards fraudulently. With these cards, he obtained cash advances and purchased goods, the value of which exceeded $200. The Commonwealth charged Owolabi with grand larceny of the credit cards, under Code § 18.2-95. In reversing his conviction, a panel of this Court observed that "[u]nder Code § 18.2-95, as at common law, only money or 'goods and chattels' are the subject of larceny." Id. at 80, 428 S.E.2d at 15. Neither the potential value of a card, nor the value of goods one buys with that card, is the measure of its actual value. Because the Commonwealth elected to charge Owolabi with common law larceny under Code § 18.2-95, and "[b]ank notes, checks and other writings and papers of value were not the subject of larceny at common law," id., the value of Owolabi's theft was the value of the physical card itself.

Hunt v. Commonwealth, 46 Va. App. 25, 614 S.E.2d 668 (2005), involved the theft of a winning "pick four" Virginia lottery ticket with a redemption value of $2,500. Hunt argued on appeal that she could be convicted only of common law petit larceny. The Commonwealth responded that Code § 18.2-98 (which criminalizes the theft of "any bank note, check, or other writing or paper of value") allowed the trial court to use the redemption value of the lottery ticket as its actual value. A panel of this Court disagreed. As in Owolabi, the Commonwealth had only charged Hunt with grand larceny in violation of Code § 18.2-95, and "[a]n indictment that charges grand larceny in violation of only Code § 18.2-95 alleges the common law crime." Id. at

- 5 -

30, 614 S.E.2d at 670. Under the common law, the facts did not give rise to a felony valuation, because "[a]t common law choses in action, including bonds, notes and checks, were not the subject of larceny, being considered mere rights without corporeal existence, although the taking of the paper on which they were written could be larceny." Id. at 31, 614 S.E.2d at 670 (quoting Felkner v. State, 146 A.2d 424, 430 (Md. Ct. App. 1958)). Hunt held that "unless violation of a specific statute *other than Code § 18.2-95 is charged*, a larceny indictment charges the common law offense." Id. at 30, 614 S.E.2d at 670 (emphasis added).

Here, the Commonwealth elected to charge Phillips with felony embezzlement under Code § 18.2-111. Although it is punishable "as provided in [Code] § 18.2-95," embezzlement is a distinct crime. Unlike the indictments in Owolabi and Hunt, the indictment here did not charge Phillips with common law larceny. This is a distinction with a difference. Although under the common law "choses in action, including bonds, notes and checks, were not the subject of larceny, being considered mere rights without corporeal existence," Hunt, 46 Va. App. at 31, 614 S.E.2d at 670 (quoting Felkner, 146 A.2d at 430), the embezzlement statute specifies that the object of embezzlement may be "any money, bill, note, check, order, draft, bond, receipt, bill of lading or any other personal property, tangible or intangible."

In finding Phillips guilty, the trial court addressed the value of the money orders, stating: "The [c]ourt finds they are a negotiable instrument by definition once they are handed over. . . . The [c]ourt can presume a benefit to the customer based on the fact that those money orders left the store . . . ." At oral argument, Phillips conceded that the money orders were negotiable instruments. Oral Argument Audio at 1:04 to 1:08 (Feb. 7, 2017). The trial court clearly used the word "presume" not as a means to invoke an explicit statutory presumption, but in the sense that the evidence permits the fact-finder to draw a conclusion. Here, testimony established that money orders were given to customers only in exchange for equivalent amounts of cash.

- 6 -

Before the trial court could find Phillips guilty of felony embezzlement, it had to find that the value of the money orders was $200 or more.  Making such a finding is not as straightforward as in the case of embezzled currency, which courts may automatically assume is worth its printed value.  Burton v. Commonwealth, 58 Va. App. 274, 283, 708 S.E.2d 444, 448 (2011) ("The face value of currency in circulation is prima facie evidence of its value.").  Nor did the Commonwealth charge Phillips under Code § 18.2-98, which provides for a legal presumption of value.  See Code § 18.2-98 (stating, in part, that "the money due on or secured by the writing, paper or book, and remaining unsatisfied, or which in any event might be collected thereon, or the value of the property or money affected thereby, shall be deemed to be the value of the article stolen").  However, even without these presumptions, ample evidence established the value of the money orders.  There was testimony that money orders are only provided in exchange for an equivalent amount of cash.  Additionally, the money order report showed the money orders were issued for a total amount of $3,502.  Finally, as negotiable instruments, money orders constitute "an unconditional promise or order to pay a specified sum of money . . . payable on demand or at a definite time."  Negotiable Instrument, Black's Law Dictionary (7th ed. 1999).  Phillips argues that the lack of any evidence that the money orders were ever negotiated further weakens the Commonwealth's value evidence.  The absence of proof of negotiation is irrelevant.  The trial court explained:

> I gave you the example on the motion to strike that even if all property is recovered in a grand larceny case, I still think, well, the case law is clear you can find someone guilty of larceny for those amounts regardless of the fact that there's no ultimate loss to the owner.

We agree with this logic.  The law does not require that a thief be permitted to enjoy the fruits of his crime before he may be charged with the theft.  Even if we assume that Tinee Giant's parent company put a stop on the money orders before such orders could be exchanged for cash or

otherwise negotiated, the embezzlement was complete when Phillips provided the money orders without taking the commensurate cash as payment. For these reasons, we affirm Phillips's embezzlement conviction.

## B. Restitution

Next, Phillips argues that "[t]he evidence did not establish that the alleged victim or anyone else incurred a loss justifying the restitution order of $3502." For the reasons that follow, we agree that the evidence did not support the restitution award, and we vacate that portion of Phillips's sentence.

Pursuant to Code § 19.2-305(B), "[a] defendant placed on probation following conviction may be required to make at least partial restitution or reparation to the aggrieved party or parties for damages or loss caused by the offense for which conviction was had." Determining restitution is a sentencing decision that "will not be reversed unless the trial court abused its discretion." Martin v. Commonwealth, 274 Va. 733, 735, 652 S.E.2d 109, 111 (2007). To survive a claim of abuse of discretion, a sentencing decision must be "supported by a preponderance of the evidence and . . . 'reasonable in relation to the nature of the offense.'" McCullough v. Commonwealth, 38 Va. App. 811, 817, 568 S.E.2d 449, 452 (2002) (quoting Deal v. Commonwealth, 15 Va. App. 157, 161, 421 S.E.2d 897, 899 (1992)). "'Restitution' is defined, in pertinent part, as 'a restoration of something to its rightful owner: the making good of or giving an equivalent for some injury (as a loss of or damage to property).'" Howell v. Commonwealth, 274 Va. 737, 740, 652 S.E.2d 107, 108 (2007) (quoting Webster's Third New International Dictionary 1936 (1993)). It also serves "to prevent a defendant 'from profiting from the crime he committed.'" Burriesci v. Commonwealth, 59 Va. App. 50, 60, 717 S.E.2d 140, 145-46 (2011) (quoting Waiters v. Commonwealth, 33 Va. App. 739, 743, 536 S.E.2d 923, 925 (2000)).

Before a trial court may order restitution, however, it must make several determinations, including whether restitution is owed at all and, if so, precisely how much is owed and to whom. Finding that a defendant stole property worth a specific dollar amount does not automatically justify a restitution award of that amount. Property can have value even though its theft causes no financial loss to its owner. In this case, the Commonwealth's own witness testified that Tinee Giant's parent company put a "stop" on the embezzled money orders. There was no evidence that the money orders were negotiated prior to the "stop." A successful "stop" would render the money orders unnegotiable. See Stop Order, Black's, supra (defining it as "[a] bank customer's order instructing the bank not to honor one of the customer's checks"). Additionally, the evidence failed to establish the identity of the victim payee. Tinee Giant sold the money orders, but the manager testified that the money orders were Western Union money orders. Even if the trial court had properly found that restitution was owed, and had determined the actual amount of the loss, the trial court's order to repay "the victim" lacked the specificity necessary to reimburse the party suffering the loss.

The trial court's restitution order was not supported by a preponderance of the evidence. While the face value of the embezzled money orders adequately proved the value of the embezzlement, it did not prove the actual loss, if any, to the victim (or the identity of the victim), even under the lower preponderance standard. The Attorney General concedes that the trial court erroneously ordered restitution, and asks us to "reverse and remand the sentencing portion of this case to the trial court for a finding on actual damages." We commend the Attorney General for this frank concession of the restitution error, but we decline to remand. The Commonwealth had an opportunity to present sufficient evidence on the issue of restitution and did not do so. For that reason, we vacate the restitution portion of Phillips's sentence.

## III. CONCLUSION

For the reasons stated above, we affirm Phillips's conviction, but vacate her restitution obligation.

<u>Affirmed in part and vacated in part.</u>